# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

EMILY MCKINLEY, as the administratrix : of the ESTATE OF FERNANDO CARR, : deceased, and LARRY BERNARD : CARR, JR., Individually; :
:
      Plaintiffs,    :    Civil Action File
:    No.
vs.    :
:
CRAIG D. OWENS SR., individually; :
MICHAEL A. WILLIAMS, individually; :
ABOSEDE OSARIEME OSAGIE, :
individually; JULIE-ANN ANTOINETTE :
FORBES, individually; KOFI NKETSIAH :
TURKSON, individually; JEMIMAH :
NANCY NDEGE, individually; BROOKE :
STEVIC, individually; LISA WILEY, :
individually; TYRANISSIUM EPHION, :
individually; BAILEY PALMER, :
individually; BARBARA RICO-ECCLES, :
individually; JAFMIN OSCAR, :
individually; AHILIA MUHAMMAD, :
individually; SHANITA SWABY, :
individually; KALA MONAI SIMS, :
individually; DEMITA SHELTON, :
individually; MELISSA HULLER, :
individually; BETTIE AGYEKUM, :
individually; TAMMY SUE COLLIS, :
individually; ANTONELDA :
MCFARLANE, individually; STEPHANIE :
 CAMPBELL, individually; NKOLIKA :
OBICHI, individually; INGRID DAVIS, :
individually; NATALIA TODD, MD., :
individually; :
Defendants. :

## COMPLAINT

1. Mr. Carr's parents, Emily McKinley, the administratrix of the Estate of Fernando Carr, and Larry Bernard Carr, Jr., (collectively "Plaintiffs") bring this civil action against Defendants Craig D. Owens Sr., Individually; Michael A. Williams, Individually; Abosede Osarieme Osagie, Individually; Julie-Ann Antoinette Forbes, Individually; Kofi Nketsiah Turkson, Individually; Jemimah Nancy Ndege, Individually; Brooke Stevic, Individually; Lisa Wiley, Individually; Tyranissium Ephion, Individually; Bailey Palmer, Individually; Barbara Rico-Eccles, Individually; Jafmin Oscar, Individually; Ahilia Muhammad, Individually; Shanita Swaby, Individually; Kala Monai Sims, Individually; Demita Shelton, Individually; Melissa Huller, Individually; Bettie Agyekum, Individually; Tammy Sue Collis, Individually; Antonelda Mcfarlane, Individually; Stephanie Campbell, Individually; Nkolika Obichi, Individually; Ingrid Davis, Individually; Natalia Todd, MD., individually; pursuant to O.C.G.A. § 51-1-27, O.C.G.A. § 51-4-2, 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

2. This lawsuit arises from the wrongful death of Fernando Carr when Mr. Carr was incarcerated at the Cobb County Adult Detention Center ("CCADC") under the care of the Cobb County Sheriff's Office during the period of his arrest on November 1, 2023, until his death on November 13, 2023.

3. On December 4, 2022, Fernando Carr, at 28 years old, suffered a myocardial infarction (a "heart attack").

4. Mr. Carr was thereafter prescribed heart medications necessary to protect his heart, manage his cardiovascular system, and allow him to continue living a normal life.

5. On November 1, 2023, Mr. Carr was arrested by the Cobb County Sheriff's Office ("CCSO") on charges related to a traffic violation and possession allegations, and he was booked at CCADC.

6. CCADC medical records show that during processing, Mr. Carr informed CCADC medical authorities of his health and medication history, including his specifically prescribed and necessary heart medications.

7. CCADC medical staff confirmed Mr. Carr's medical history by contacting his previous provider and pharmacy for his past heart condition and prescriptions.

8. CCDAC and Defendants placed Mr. Carr on a "Chronic Care" plan.

9. CCDAC and Defendants were aware of Mr. Carr's serious heart condition, necessary medications, and need for monitoring.

10. CCDAC medical staff monitored Mr. Carr's blood pressure, related to his withdrawal from pain medication, due to a leg injury.

11. The first day of Mr. Carr's stay, Mr. Carr had stable blood pressure readings:

| Date | Time | Systolic Pressure | Diastolic Pressure | Pulse Rate | Defendant recording |
|---|---|---|---|---|---|
| 11/1/23 | 8:12 a.m. | 124 | 88 | 82 | Stevic |
| 11/1/23 | 4:23 p.m. | 130 | 82 | 80 | Osagie |

12. Through the next six days of incarceration without the heart medications that CCDAC – through deliberate indifference had refused to provide to him – Mr. Carr's blood pressure readings began to spike.

13. On November 7, 2023, Mr. Carr's blood pressure spiked to 146 over 104.

14. Rather than provide him his heart medication and seeking medical attention for this 29-year-old with a recent heart attack, the medical team at CCDAC instead STOPPED all monitoring of Mr. Carr.

15. CCDAC doctors and medical staff *never* followed up on Mr. Carr's cardiac medication, never secured his medication, and never provided necessary medication to Mr. Carr.

16. Six days later, Mr. Carr collapsed in the yard and died of a heart attack.

### The Parties, Jurisdiction & Venue

17. Emily McKinley and Larry Bernard Carr, Jr., are the surviving parents of the deceased Fernando Carr.

18. Plaintiffs, as the surviving parents and next of kin of Fernando Carr, are the proper parties to file claims as Fernando Carr's survivors.

-4-

19. Emily McKinley was appointed the estate administratrix for Fernando Carr on July 10, 2024, in the Probate Court of Cobb County – Estate Number 24-P-0933.

20. All estate-based claims deadlines for this instant action were tolled, pursuant to O.C.G.A. § 9-3-92, until July 10, 2024.

21. Therefore, Emily McKinley is the appropriate party to file claims on behalf of the Estate of Fernando Carr.

22. Defendant Craig D. Owens, Sr. ("Owens") was, at all times relevant to this lawsuit, the Sheriff of Cobb County, Georgia.

23. Defendant Owens was, at all times relevant to this lawsuit, the Chief Jailer of CCDAC.

24. Defendant Owens is sued in his individual capacity only.

25. Defendant Owens is a resident of Cobb County, GA.

26. Defendant Owens is subject to the jurisdiction of this Court.

27. Defendant Michael A. Williams ("Williams") was, at all times relevant to this lawsuit, a Colonel in the CCSO.

28. Defendant Williams was, at all times relevant to this lawsuit, the Detention Commander of CCDAC in Georgia.

29. Defendant Williams is sued in his individual capacity only.

30. Defendant Williams is a resident of Paulding County, GA.

31. Defendant Williams is subject to the jurisdiction of this Court.

32. Defendant Abosede Osariemen Osagie ("Osagie") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

33. Defendant Osagie is sued in his individual capacity only.

34. Defendant Osagie is a resident of Cobb County, GA.

35. Defendant Osagie is subject to the jurisdiction of this Court.

36. Defendant Julie-Ann Antoinette Forbes ("Forbes") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

37. Defendant Forbes is sued in her individual capacity only.

38. Defendant Forbes is a resident of Gwinnett County, GA.

39. Defendant Forbes is subject to the jurisdiction of this Court.

40. Defendant Kofi Nketsiah Turkson ("Turkson") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

41. Defendant Turkson is sued in her individual capacity only.

42. Defendant Turkson is a resident of Cobb County, GA.

43. Defendant Turkson is subject to the jurisdiction of this Court.

44. Defendant Jemimah Nancy Ndege ("Defendant Ndege") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

45. Defendant Ndege is sued in her individual capacity only.

46. Defendant Ndege is a resident of Cobb County, GA.

47. Defendant Ndege is subject to the jurisdiction of this Court.

48. Defendant Brooke Stevic ("Stevic") was, at all times relevant to this lawsuit, a paramedic whose duties included providing medical services to inmates housed in CCDAC, Georgia.

49. Defendant Stevic is sued in her individual capacity only.

50. Defendant Stevic is a resident of Cobb County, GA

51. Defendant Stevic is subject to the jurisdiction of this Court.

52. Defendant Lisa Wiley ("Wiley") was, at all times relevant to this lawsuit, a staff member whose duties included providing medical services to inmates housed in CCDAC, Georgia.

53. Defendant Wiley is sued in his individual capacity only.

54. Defendant Wiley is a resident of DeKalb County, GA.

55. Defendant Wiley is subject to the jurisdiction of this Court.

56. Defendant Tyranissium Ephion ("Ephion") was, at all times relevant to this lawsuit, a staff member whose duties included providing medical services to inmates housed in CCDAC, Georgia.

57. Defendant Ephion is sued in her individual capacity only.

58. Defendant Ephion is a resident of Fulton County, GA.

59. Defendant Ephion is subject to the jurisdiction of this Court.

60. Defendant Bailey Rena Palmer ("Palmer") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

61. Defendant Palmer is sued in his individual capacity only.

62. Defendant Palmer is a resident of Cobb County, GA.

63. Defendant Palmer is subject to the jurisdiction of this Court.

64. Defendant Barbara Adelfa Rico-Eccles ("Rico-Eccles") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

65. Defendant Rico-Eccles is sued in her individual capacity only.

66. Defendant Rico-Eccles is a resident of Cobb County.

67. Defendant Rico-Eccles is subject to the jurisdiction of this Court.

68. Defendant Jafmin Oscar ("Oscar") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

69. Defendant Oscar is sued in her individual capacity only.

70. Defendant Oscar is a resident of Cobb County, GA.

71. Defendant Oscar is subject to the jurisdiction of this Court.

72. Defendant Ahilia Muhammad ("Muhammad") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

73. Defendant Muhammad is sued in his individual capacity only.

74. Defendant Muhammad is a resident of Gwinnett County, GA.

75. Defendant Muhammad is subject to the jurisdiction of this Court.

76. Defendant Shanita Swaby ("Swaby") was, at all times relevant to this lawsuit, a staff member whose duties included providing medical services to inmates housed in CCDAC, Georgia.

77. Defendant Swaby is sued in her individual capacity only.

78. Defendant Swaby is a resident of Cobb County, GA.

79. Defendant Swaby is subject to the jurisdiction of this Court.

80. Defendant Kala Monai Sims ("Sims") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

81. Defendant Sims is sued in her individual capacity only.

82. Defendant Sims is a resident of Fulton County, GA.

83. Defendant Sims is subject to the jurisdiction of this Court.

84. Defendant Demita Shelton ("Shelton") was, at all times relevant to this lawsuit, a staff member whose duties included providing medical services to inmates housed in CCDAC, Georgia.

85. Defendant Shelton is sued in her individual capacity only.

86. Defendant Shelton is a resident of Gwinnett County, GA.

87. Defendant Shelton is subject to the jurisdiction of this Court.

88. Defendant Melissa Huller ("Huller") was, at all times relevant to this lawsuit, a staff member whose duties included providing medical services to inmates housed in CCDAC, Georgia.

89. Defendant Huller is sued in her individual capacity only.

90. Defendant Huller is a resident of Gordon County, GA.

91. Defendant Huller is subject to the jurisdiction of this Court.

92. Defendant Bettie Agyekum ("Agyekum") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

93. Defendant Agyekum is sued in her individual capacity only.

94. Defendant Agyekum is a resident of Douglas County, GA.

95. Defendant Agyekum is subject to the jurisdiction of this Court.

96. Defendant Tammy Sue Collis ("Collis") was, at all times relevant to this lawsuit, a staff member at CCDAC.

97. Defendant Collis is sued in her individual capacity only.

98. Defendant Collis is a resident of Paulding County, GA.

99. Defendant Collis is subject to the jurisdiction of this Court.

100. Defendant Antonelda McFarlane ("McFarlane") was, at all times relevant to this lawsuit, a licensed professional nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

101. Defendant McFarlane is sued in her individual capacity only.

102. Defendant McFarlane is a resident of Newton County, GA.

103. Defendant McFarlane is subject to the jurisdiction of this Court.

104. Defendant Stephanie Campbell ("Campbell") was, at all times relevant to this lawsuit, a licensed practical nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

105.  Defendant Campbell is sued in her individual capacity only.

106.  Defendant Campbell is a resident of Gwinnett County, GA.

107.  Defendant Campbell is subject to the jurisdiction of this Court.

108.  Defendant Nkolika Obichi ("Obichi") was, at all times relevant to this lawsuit, a staff member at CCDAC.

109.  Defendant Obichi is sued in her individual capacity only.

110.  Defendant Obichi is a resident of Douglas County, GA.

111.  Defendant Obichi is subject to the jurisdiction of this Court.

112.  Defendant Ingrid Natalie Davis ("Davis") was, at all times relevant to this lawsuit, a licensed practical nurse whose duties included providing medical services to inmates housed in CCDAC, Georgia.

113.  Defendant Davis is sued in her individual capacity only.

114.  Defendant Davis is a resident of Greenville County, SC.

115.  Defendant Davis is subject to the jurisdiction of this Court.

116.  Defendant Natalia Todd ("Todd") was, at all times relevant to this lawsuit, a medical doctor employed to oversee medical services provided to inmates housed in CCDAC, Georgia.

117.  Defendant Todd is a licensed medical doctor in Georgia.

118.  Defendant Todd is sued in her individual capacity only.

119.  Defendant Todd is a resident of Cobb County, GA.

120. Defendant Todd is subject to the jurisdiction of this Court.

121. This Court has subject matter jurisdiction over Plaintiffs' claims.

122. As one or more Defendants are residents of Georgia in the Northern District, venue is proper in this Court.

123. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under the Constitution and laws of the United States.

## Facts

### I.    Carr's Arrest & Booking, and Initial Screening into CCSO Jail.

124. On November 1, 2023, at approximately 4:00 a.m., CCSO Officer J. Spires stopped Mr. Carr for a routine traffic violation near Atlanta Road and Ridge Road, Georgia.

125. During the traffic stop, Officer J. Spires arrested Mr. Carr for alleged possession of a firearm and a Schedule 1 substance.

126. CCSO transported Mr. Carr to CCDAC located at 1825 County Services Parkway.

127. On November 1, 2023, around 8:12 a.m., Mr. Carr arrived at CCDAC, where Defendant Stevic, a paramedic, conducted a preliminary check of Mr. Carr and asked screening questions.

128. Defendant Stevic asked whether Mr. Carr had a "Heart Condition", and Mr. Carr responded, "Yes."

| 001054270 | Receiving Screening - R | Heart Condition *If Yes is marked, an Alert will automatically generate for Chronic Care. | Yes | | Stevic, Brooke | 11-01-2023 8:12 am |
|---|---|---|---|---|---|---|

129. As a result of Mr. Carr's positive response to having a heart condition, an "Alert" was "automatically" generated for "Chronic Care" by CCDAC's health record system.

130. Defendant Stevic further annotated that Mr. Carr had "MI earlier this year treated at Piedmont Hospital," meaning that CCDAC medical staff records had express knowledge of Mr. Carr's prior heart attack or myocardial infarction.

| 001054270 | Receiving Screening - R | List: | | MI earlier this year treated at Piedmont Hospital | Stevic, Brooke | 11-01-2023 8:12 am |
|---|---|---|---|---|---|---|

131. Defendant Stevic asked: "Are you taking, or supposed to be taking, any other medications or treatments prescribed by a health care provider…" and Mr. Carr stated "Yes".

| 001054270 | Receiving Screening - R | Are you taking, or supposed to be taking, any other medications or treatments prescribed by a health care provider including chemotherapy, radiation, clinical trials, psychotropic or other medications? | Yes | | Stevic, Brooke | 11-01-2023 8:12 am |
|---|---|---|---|---|---|---|

132. Defendant Stevic asked what medications Mr. Carr was on, and Mr. Carr stated Oxycodone, Metoprolol, Lisinopril, and Atorvastatin.

133. Metoprolol is a well-known medication prescribed for heart and circulatory conditions.

134.  Metoprolol is used to improve survival and prevent further damage after a heart attack, and is used in combination with other medications to lower the risk of death and the need for hospitalization in certain people with chronic heart failure.

135.  Lisinopril is a well-known medication.

136.  Lisinopril is used to treat high blood pressure (hypertension), heart failure, and to improve survival and reduce the risk of further complications after a heart attack.

137.  Atorvastatin is another well-known medication mainly prescribed to lower high cholesterol and triglyceride levels in the blood and to decrease the risk of heart disease, heart attack, and stroke.

138.  CCDAC medical team, including Defendants, thus knew that the 29-year-old Mr. Carr had a recent history of heart failure and needed three medications prescribed to prevent heart failure.

139.  Despite the actual knowledge shown in the medical intake records, CCDAC *never* secured these medications for Mr. Carr despite his express request for the medications.

| 001054270 | Receiving Screening - R | List: Medication Name Dosage Frequency Route Last Dose Reason for taking Prescriber Pharmacy | Oxycodone 7.5mg, Metoprolol, Lisinopril, Atorvastatin CVS 2350 Cheshire Bridge Rd NE, Atlanta, GA 30324 | Stevic, Brooke | 11-01-2023 8:12 am |
|---|---|---|---|---|---|

140.  Mr. Carr also stated he took oxycodone for an injury to his leg.

141. As a result of the oxycodone use, Mr. Carr was placed on a 24-hour "Detox".

142. On November 1, 2023, at or around 8:30 a.m., Defendant Agyekum, a licensed professional nurse, ordered Mr. Carr's prescriptions of Acetaminophen (Tylenol), Loperamide (Imodium), and Meclizine (Antivert).

143. On November 1, 2023, at or around 9:35 a.m., Defendant Todd, a licensed physician, approved Mr. Carr's prescriptions of Acetaminophen (Tylenol), Loperamide (Imodium), and Meclizine (Antivert).

144. CCSO admitted Mr. Carr to the CCDAC at approximately 10:00 a.m. on November 1, 2023.

145. CCSO finished booking Mr. Carr into CCDAC at approximately 1:04 p.m. on November 1, 2023.

146. On November 1, 2023, at approximately 4:19 p.m., after booking, Mr. Carr was taken to the infirmary for additional screening with Defendant Osagie for "Detox".

147. Defendant Forbes annotated Mr. Carr's "Current Complaints" with a "PMH (prior medical history) of HTN (hypertension) [and] Heart Condition (MI earlier this year treated at Piedmont Hospital)".

| INF-172463-0000 | Infirmary/OPHU Provider History and Physical | Current Complaints: | COWS: Oxycodone daily for a GSW in 2015 Last Date taken: Yesterday PMH: HTN, Heart Condition (MI earlier this year treated at Piedmont Hospital - medical records requested) Gastritis: Denies | Forbes, Julie-Ann | 11-01-2023 6:29 pm |

148. Defendant Forbes contacted Mr. Carr's CVS pharmacy and confirmed he had been prescribed Metoprolol 25mg, Lisinopril 5mg, Atorvastatin 80mg, and Aspirin 81mg.

149. On November 1 through November 13, 2023, Mr. Carr explicitly and unambiguously stated he needed his heart medications.

150. On November 1, 2023, at or around 6:30 p.m., Defendant Forbes ordered Mr. Carr a prescription of Aspirin 81mg (Aspir-Low).

151. Defendant Forbes never ordered the other required heart medications for Mr. Carr.

152. Mr. Carr's blood pressure and pulse were monitored from November 1 to November 7, 2023, by Defendants Stevic, Osagie, Rico-Eccles, Oscar, Swaby, Sims, and Shelton[1].

| Date | Time | Systolic Pressure | Diastolic Pressure | Pulse Rate | Defendant recording |
|---|---|---|---|---|---|
| 11/1/23 | 8:12 a.m. | 124 | 88 | 82 | Stevic |
| 11/1/23 | 4:23 p.m. | 130 | 82 | 80 | Osagie |
| 11/2/23 | 7:30 a.m. | 127 | 79 | 97 | Osagie |
| 11/2/23 | 4:13 p.m. | 114 | 83 | 75 | Osagie |
| 11/2/23 | 12:13 a.m. | 107 | 76 | 74 | Rico-Eccles |
| 11/2/23 | 11:37 p.m. | 121 | 84 | 70 | Oscar |
| 11/3/23 | 4:26 p.m. | 132 | 96 | 68 | Unknown |
| 11/3/23 | 4:26 p.m. | 117 | 85 | NONE | Unknown |
| 11/4/23 | 12:06 a.m. | 145 | 89 | 76 | Oscar |

[1] Yellow for Elevated (120+ Systolic with less than 80 Diastolic), Orange for Hypertension Stage 1 (130+ Systolic or 80+ Diastolic) and Red for Hypertension Stage 2 (140+ Systolic or 90+ Diastolic).

| 11/4/23 | 5:33 p.m. | 129 | 88 | 73 | Swaby |
|---------|-----------|-----|----|----|-------|
| 11/5/23 | NONE | NONE | NONE | NONE | NONE |
| 11/6/23 | 8:09 a.m. | 110 | 84 | 82 | Sims |
| 11/6/23 | 5:13 p.m. | 136 | 81 | 71 | Sims |
| 11/7/23 | 3:17 a.m. | 146 | 104 | 83 | Shelton |
| 11/7/23 | 1:36 p.m. | 129 | 88 | 72 | Unknown |
| 11/7/23 | 3:55 p.m. | 134 | 86 | 62 | Huller |

153. Mr. Carr's blood pressure was stable for the first two days of his detainment on November 1 through November 2, 2023.

154. Without his heart medication, Mr. Carr's blood pressure objectively worsened during the last three days of monitoring from November 4 through November 7, 2023.

155. Of the fifteen times Mr. Carr's vitals were taken between November 1 and November 7, 2023:

   a. One (1) indicated normal blood pressure,

   b. One (1) indicated elevated blood pressure,

   c. Ten (10) indicated Stage 1 Hypertension, and

   d. Three (3) indicated Stage 2 Hypertension.

156. Mr. Carr's blood pressure was abnormal in fourteen out of fifteen readings.

157. Mr. Carr's blood pressure gradually worsened from November 1, 2023, to November 7, 2023.

158. By far, Mr. Carr's worst blood pressure reading was on November 7, 2023.

159. For no known reason, CCDAC's response was to STOP all hypertension monitoring and to CONTINUE to deny Mr. Carr his heart and hypertension medication.

160. Mr. Carr was dead six days later.

> **II.** **Defendants Stevic, Forbes, Turkson, Ndege, Wiley, Ephion, Palmer, Rico-Eccles, Oscar, Muhammad, Swaby, Sims, Shelton, Huller, Agyekum, Collis, Mcfarlane, Campbell, Obichi, Davis, and Todd (collectively the "<u>Medical Staff Defendants</u>") knew that Mr. Carr had a substantial health risk, and Neither Provided nor Procured Prescribed Heart Medication or Any Medical Treatment.**

161. The Medical Staff Defendants, as medical professionals, knew what a Myocardial Infarction or heart attack is.

162. The Medical Staff Defendants, as medical professionals, knew that abruptly stopping heart-protective prescriptions (including Metoprolol 25mg, Lisinopril 5mg, Atorvastatin 80mg, and Aspirin 81mg) can cause adverse health consequences, including but not limited to a heart attack.

163. The Medical Staff Defendants, as medical professionals, knew that opiate withdrawal can negatively affect or strain the cardiovascular system, which can lead to adverse health consequences, including but not limited to a heart attack.

164. The Medical Staff Defendants, as medical professionals, knew that someone with elevated or hypertensive blood pressure can experience more serious

-19-

health complications if they have had prior heart issues, including but not limited to a heart attack.

165. The Medical Staff Defendants, as medical professionals, knew that blood pressure is considered elevated when it is 120–129 systolic and less than 80 diastolic.

166. The Medical Staff Defendants, as medical professionals, knew that someone has Stage 1 Hypertension when their blood pressure ranged from 130–139 (systolic) or 80–89 (diastolic).

167. The Medical Staff Defendants, as medical professionals, knew that someone has Stage 2 Hypertension when their blood pressure is 140 or higher (systolic) or 90 or higher (diastolic).

168. The Medical Staff Defendants, as medical professionals, knew that someone with Hypertension requires regular and consistent monitoring of their vitals.

169. The Medical Staff Defendants, as medical professionals, knew that someone who has (1) stopped their heart medications, (2) undergone opioid detox, (3) shown signs of high blood pressure or hypertension, and (4) has had a previous heart attack, is at an increased substantial risk of serious harm, including a heart attack and death.

170. From November 1 to 13, 2023, each and every Medical Staff Defendant knew that Mr. Carr had a recent prior heart attack.

171. From November 1 to 13, 2023, each and every Medical Staff Defendant knew Mr. Carr was treated at Piedmont Atlanta Hospital for his previous heart attack.

172. From November 1 to 13, 2023, each and every Medical Staff Defendant knew Mr. Carr's prior heart attack had happened less than a year before his arrest.

173. From November 1 to 13, 2023, the Medical Staff Defendants requested Mr. Carr's records from Piedmont Atlanta Hospital.

174. From November 1 to 13, 2023, the Medical Staff Defendants received Mr. Carr's records from Piedmont Atlanta Hospital.

175. From November 1 to 13, 2023, each and every Medical Staff Defendant knew Mr. Carr was prescribed heart-protective medications (Metoprolol 25mg, Lisinopril 5mg, Atorvastatin 80mg, and Aspirin 81mg) by Piedmont Atlanta Hospital following his December 4, 2022, heart attack, that Mr. Carr had requested such medications, and that Mr. Carr had not been provided such medication while being detained at CCDAC.

176. From November 1 to 13, 2023, each and every Medical Staff Defendant knew that Mr. Carr was undergoing an opioid detox during his detainment at CCDAC.

177. From November 1 to 13, 2023, each and every Medical Staff Defendant knew Mr. Carr had elevated blood pressure.

178. From November 1 to 13, 2023, each and every Medical Staff Defendant knew Mr. Carr had blood pressure that qualified as Stage 1 Hypertension.

179. From November 1 to 13, 2023, each and every Medical Staff Defendant knew Mr. Carr had blood pressure that qualified as Stage 2 Hypertension.

180. Each and every Medical Staff Defendant never provided or attempted to provide Mr. Carr's prescriptions for Metoprolol 25mg, Lisinopril 5mg, or Atorvastatin 80mg.

181. The medications provided by the Medical Staff Defendants (Acetaminophen (Tylenol), Loperamide (Imodium), Meclizine (Antivert), and Aspirin) were not, could not, and were never meant to address Mr. Carr's risk for a heart attack.

182. Despite knowing Mr. Carr's medical history, prescriptions, ongoing detox, and worsening blood pressure, each and every Medical Staff Defendant, with deliberate indifference, neither attempted nor prescribed Mr. Carr's heart medications—Metoprolol 25mg, Lisinopril 5mg, or Atorvastatin 80mg.

183. Despite knowing Mr. Carr's medical history, prescriptions, ongoing detox, and worsening blood pressure, each and every Medical Staff Defendant showed deliberate indifference by neither attempting to nor presenting Mr. Carr to a qualified medical professional to treat his unmedicated heart condition or his deteriorating blood pressure.

184. Despite knowing Mr. Carr's medical history, prescriptions, ongoing detox, and worsening blood pressure, each and every Medical Staff Defendant, with deliberate indifference, stopped all monitoring of Mr. Carr's health condition, prescription intake, and blood pressure after November 7, 2025.

### III.  Mr. Carr's Heart Attack on November 13, 2024

185. On November 13, 2024, six days after his last blood pressure reading, in the afternoon before 2:19 p.m., Mr. Carr and other inmates were in CCDAC's exercise yard.

186. Mr. Carr looked lethargic and exhausted when he collapsed.

187. He was taken to the infirmary for "possible low blood sugar."

188. The infirmary documented his symptoms as "diaphoretic, lethargic, [and] bloodshot eyes" and "[has] mild seizure-like activity."

189. He then quickly became unresponsive and stopped breathing.

190. While resuscitative efforts were made, he was transported to Kennestone Hospital around 2:50 p.m.

191. When Mr. Carr arrived at Kennestone, he was declared dead.

192. The Medical Examiner's report concluded that his manner of death was natural, and the cause of death was "hypertensive and atherosclerotic cardiovascular disease."

193. Mr. Carr died of a heart attack, and no other causes, such as overdose or violence, were identified.

194. At the time of his passing on November 13, 2023, Mr. Carr was 29 years old.

**IV. Mr. Carr Died Due to the Medical Staff Defendants' Callous Indifference and Reckless Disregard for Mr. Carr's Serious Medical Needs.**

195. No later than 8:12 a.m. on November 1, 2023, the Medical Staff Defendants were aware of Mr. Carr's medical and prescription history concerning his heart attack and medications.

196. The Medical Staff Defendants failed to provide aid to Mr. Carr for his known heart issues by not:

   a. Prescribing the medications he had active prescriptions for his heart condition;

   b. Consistently monitoring Mr. Carr's vital signs daily;

   c. Continuously monitoring Mr. Carr's vital signs during his detention;

   d. Reevaluating Mr. Carr's medical condition when his vital signs were not improving; and

   e. Referring Mr. Carr for specialist care due to his clear heart issues and existing prescriptions, which were discontinued upon detainment.

197. By failing to provide aid to Mr. Carr, despite awareness of a serious medical need, each and every Medical Staff Defendants were deliberately indifferent to Mr. Carr's health from November 1 to 13, 2023.

198. By failing to assist Mr. Carr despite knowing about a serious medical need, each and every Medical Staff Defendants were deliberately indifferent to Mr. Carr's life from November 1 through 13, 2023.

### V. Before Mr. Carr's Death, the Medical Staff Defendants Knew of Mr. Carr's Serious Medical Need.

199. Each and every Medical Staff Defendant knew about Mr. Carr's serious medical need by no later than 8:12 a.m. on November 1, 2023.

200. Each and every Medical Staff Defendant's failure to act was not an objectively reasonable response to Mr. Carr's serious medical need.

201. Each and every Medical Staff Defendant's decision to stop blood pressure monitoring was not an objectively reasonable response to Mr. Carr's serious medical need.

202. Despite their knowledge of Mr. Carr's serious medical need from November 1 through 13, 2023, each and every Medical Staff Defendant acted with callous indifference and reckless disregard for his life and health by doing nothing to help his heart condition.

203. Despite their knowledge of Mr. Carr's serious medical need from November 1 to 13, 2023, each and every Medical Staff Defendant acted with callous

indifference and reckless disregard for his life and health by neglecting his heart condition for 13 days.

**Count One – Professional Negligence Against the Medical Staff Defendants (Excluding Defendant Todd, who is named individually in Count Two)**

204. Plaintiffs allege this count pursuant to O.C.G.A. § 51-1-27.

205. Each and every Medical Staff Defendant interacted with Mr. Carr from November 1 through 13, 2023.

206. Each and every Medical Staff Defendant spoke with Mr. Carr from November 1 through 13, 2023.

207. Each and every Medical Staff Defendant knew of Mr. Carr's health condition.

208. Each and every Medical Staff Defendant knew of Mr. Carr's prior medications prescribed to him.

209. Each and every Medical Staff Defendant knew of Mr. Carr's health chart and notes therein from November 1 through 13, 2023.

210. Each and every Medical Staff Defendant knew of Mr. Carr's ongoing opioid detox and withdrawal.

211. Each and every Medical Staff Defendant participated in reviewing, cataloging, annotating, recording, or taking Mr. Carr's vitals.

212. Each and every Medical Staff Defendant knew that Mr. Carr had recently suffered a myocardial infarction, was prescribed Metoprolol, Lisinopril, and Atorvastatin, had requested Metoprolol, Lisinopril, and Atorvastatin, and had

not been provided Metoprolol, Lisinopril, and Atorvastatin at any time during his incarceration.

213. Each and every Medical Staff Defendant had a duty of care and standard of care, which included the duty to evaluate and continue to evaluate and monitor Mr. Carr's prescription needs and provide the prescriptions that he needed.

214. Each and every Medical Staff Defendant failed to meet the standard of care relating to Mr. Carr's prescription and health needs.

215. Each and every Medical Staff Defendant also failed to meet the standard of medical care by removing Mr. Carr from oxycodone without determining a clinical basis to discontinue it.

216. Each and every Medical Staff Defendant also failed to meet the standard of medical care by failing to ensure continuation of community-prescribed medication (Metoprolol, Lisinopril, and Atorvastatin) without determining a clinical basis to discontinue or alter such prescription.

217. Each and every Medical Staff Defendant also failed to meet the standard of medical care by failing to reach out to the community to determine Mr. Carr's present needs in terms of pharmacological support, including contacting practitioners in the community and Piedmont Hospital.

218. Each and every Medical Staff Defendant also failed to meet the standard of medical care by failing to ensure timely access to hospital-level of care, when

among other delaying activities, at the time of his death on November 13, 2023, his blood was drawn for routine laboratory studies, when an immediate emergency department referral was indicated.

219. Mr. Carr was injured and suffered damages and died as a result of each of the breaches of the standard of medical care by the Medical Staff Defendants.

220. Each and every Medical Staff Defendant owed a duty to Mr. Carr to exercise that degree of care, skill, and diligence ordinarily employed by members of the nursing or medical profession generally under similar conditions and like surrounding circumstances.

221. Beginning with the observations the Medical Staff Defendants made of Mr. Carr's past and current medical history on November 1, 2023, at approximately 8:12 a.m., each and every Medical Staff Defendant owed a duty to Mr. Carr to refer him to a cardiologist to evaluate Mr. Carr's medical condition.

222. Based on Mr. Carr's deteriorating blood pressure readings from November 1 through November 7, 2025, each and every Medical Staff Defendant owed a duty to Mr. Carr to refer him to a cardiologist to evaluate Mr. Carr's medical condition.

223. Based on Mr. Carr's deteriorating blood pressure readings from November 1 through November 7, 2025, each and every Medical Staff Defendant owed a

duty to Mr. Carr to continue blood pressure monitoring beyond November 7, 2025.

224. Based on Mr. Carr's disclosure of his prescriptions, each and every Medical Staff Defendant owed a duty to Mr. Carr to prescribe him equivalent or the same prescriptions.

225. Each and every Medical Staff Defendant was negligent in their care and treatment of Mr. Carr and departed from that degree of care, skill, and diligence ordinarily employed by members of the nursing or medical profession generally under similar conditions and like surrounding circumstances.

226. The affidavit and curriculum vitae of Ryan D. Herrington, MD, MPH, CCHP, an expert witness competent to testify as to the standard of care required of the Medical Staff Defendants, identifying at least one negligent act or omission claimed to exist. The factual basis for each such claim is attached to this Complaint as Exhibit 1 in compliance with O.C.G.A. § 9-11-9.1 and incorporated in Plaintiffs' Complaint for damages.

227. As a result of the acts/omissions of each and every Medical Staff Defendant, as alleged, Plaintiffs are entitled to recover damages against each and every Medical Staff Defendant for the full value of Mr. Carr's life, Mr. Carr's pre-death pain and suffering, burial/funeral expenses, lost wages and other special

and general damages as shown by the evidence and determined by the enlightened conscious of the jury.

### Count Two – Professional Negligence Against Defendant Todd

228. Plaintiffs allege this count pursuant to O.C.G.A. § 51-1-27.

229. Defendant Todd interacted with Mr. Carr from November 1 through 13, 2023.

230. Defendant Todd spoke with Mr. Carr from November 1 through 13, 2023.

231. Defendant Todd knew of Mr. Carr's health condition.

232. Defendant Todd knew of Mr. Carr's prior medications prescribed to him.

233. Defendant Todd knew of Mr. Carr's health chart and notes therein from November 1 through 13, 2023.

234. Defendant Todd knew of Mr. Carr's ongoing opioid detox and withdrawal.

235. Defendant Todd participated in reviewing, cataloging, annotating, recording, or taking Mr. Carr's vitals.

236. Defendant Todd knew that Mr. Carr had recently suffered a myocardial infarction, was prescribed Metoprolol, Lisinopril, and Atorvastatin, had requested Metoprolol, Lisinopril, and Atorvastatin, and had not been provided Metoprolol, Lisinopril, and Atorvastatin at any time during his incarceration.

237. Defendant Todd had a duty of care and standard of care, which included the duty to evaluate and continue to evaluate and monitor Mr. Carr's prescription needs and provide the prescriptions that he needed.

238. Defendant Todd failed to meet the standard of care relating to Mr. Carr's prescription and health needs.

239. Defendant Todd also failed to meet the standard of medical care by removing Mr. Carr from oxycodone without determining a clinical basis to discontinue it.

240. Defendant Todd also failed to meet the standard of medical care by failing to ensure continuation of community-prescribed medication (Metoprolol, Lisinopril, and Atorvastatin) without determining a clinical basis to discontinue or alter such prescription.

241. Defendant Todd also failed to meet the standard of medical care by failing to reach out to the community to determine Mr. Carr's present needs in terms of pharmacological support, including contacting practitioners in the community and Piedmont Hospital.

242. Defendant Todd also failed to meet the standard of medical care by failing to ensure timely access to hospital-level of care, when, among other delaying activities, at the time of his death on November 13, 2023, his blood was drawn for routine laboratory studies, when an immediate emergency department referral was indicated.

243. Mr. Carr was injured and suffered damages and died as a result of each of the breaches of the standard of medical care by Defendant Todd.

244. Defendant Todd owed a duty to Mr. Carr to exercise that degree of care, skill, and diligence ordinarily employed by members of the nursing or medical profession generally under similar conditions and like surrounding circumstances.

245. Beginning with the observations the Medical Staff Defendants made of Mr. Carr's past and current medical history on November 1, 2023, at approximately 8:12 a.m., Defendant Todd owed a duty to Mr. Carr to refer him to a cardiologist to evaluate Mr. Carr's medical condition.

246. Based on Mr. Carr's deteriorating blood pressure readings from November 1 through November 7, 2025, Defendant Todd owed a duty to Mr. Carr to refer him to a cardiologist to evaluate Mr. Carr's medical condition.

247. Based on Mr. Carr's deteriorating blood pressure readings from November 1 through November 7, 2025, Defendant Todd owed a duty to Mr. Carr to continue blood pressure monitoring beyond November 7, 2025.

248. Based on Mr. Carr's disclosure of his prescriptions, Defendant Todd owed a duty to Mr. Carr to prescribe him equivalent or the same prescriptions.

249. Defendant Todd was negligent in her care and treatment of Mr. Carr and departed from that degree of care, skill, and diligence ordinarily employed by members of the nursing or medical profession generally under similar conditions and like surrounding circumstances.

250. The affidavit and curriculum vitae of Ryan D. Herrington, MD, MPH, CCHP, an expert witness competent to testify as to the standard of care required of Defendant Todd, identifying at least one negligent act or omission claimed to exist. The factual basis for each such claim is attached to this Complaint as Exhibit 1 in compliance with O.C.G.A. § 9-11-9.1 and incorporated in Plaintiffs' Complaint.

251. As a result of the acts/omissions of Defendant Todd, as alleged, Plaintiffs are entitled to recover damages against Defendant Todd for the full value of Mr. Carr's life, Mr. Carr's pre-death pain and suffering, burial/funeral expenses, lost wages and other special and general damages as shown by the evidence and determined by the enlightened conscious of the jury.

**Count Three –Wrongful Death Against the Medical Staff Defendants**

252. Plaintiffs allege this count pursuant to O.C.G.A. § 51-4-2.

253. As a direct and proximate cause of the negligence of the Medical Staff Defendants as described herein, Mr. Carr suffered and died on November 13, 2023.

254. Plaintiff Emily McKinley, as a surviving heir of Mr. Carr, brings this action on behalf of those qualified to recover damages from the Medical Staff Defendants for the full value of the life of Mr. Carr, as set forth in O.C.G.A. § 51-4-2.

255. Plaintiff Larry Bernard Carr, Jr., as a surviving heir of Mr. Carr, brings this action on behalf of those qualified to recover damages from the Medical Staff Defendants for the full value of the life of Mr. Carr, as set forth in O.C.G.A. § 51-4-2.

256. Plaintiff Emily McKinley, in her representative capacity on behalf of The Estate of Fernando Carr, brings this action on behalf of those qualified to recover damages from the Medical Staff Defendants for the full value of the life of Mr. Carr, as set forth in O.C.G.A. § 51-4-2.

257. Each and every Medical Staff Defendant failed to provide care to Mr. Carr that conformed to the applicable standard of care for nursing or medicine.

258. Each and every Medical Staff Defendant ignored Mr. Carr's serious medical need – a serious heart condition that required medication.

259. Despite having actual knowledge that Mr. Carr was an at-risk heart patient, each and every Medical Staff Defendant failed to take any action to provide medical care to reduce, prevent, or otherwise mitigate Mr. Carr's heart condition.

260. As a result of the acts/omissions of the Medical Staff Defendants, as alleged, Plaintiffs are entitled to recover damages against each and every Medical Staff Defendants for the full value of Mr. Carr's life, Mr. Carr's pre-death pain and suffering, burial/funeral expenses, lost wages and other special and general

damages as shown by the evidence and determined by the enlightened conscious of the jury.

### Count Four: Deliberate Indifference to Serious Medical Need Against the Medical Staff Defendants.

261. Plaintiffs allege this count pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments.

262. Plaintiffs allege this count against the Medical Staff Defendants solely in their individual capacities.

263. At all times on November 1 - 13, 2023, each and every Medical Staff Defendant acted under color of law.

264. The Medical Staff Defendants were licensed EMTS, paramedics, professional nurses, licensed practical nurses, licensed physicians, or other medical personnel who observed and/or treated Mr. Carr in the CCSO Jail infirmary on November 1 - 13, 2023.

265. On November 1 - 13, 2023, each and every Medical Staff Defendant knew that Mr. Carr had a serious heart condition and required heart medications to manage it, and, therefore, was at substantial risk of serious harm.

266. On November 1 - 13, 2023, Mr. Carr disclosed to the Medical Staff Defendants his heart condition and medication requirements.

267. Each and every Medical Staff Defendant knew from these interactions with and observations of Mr. Carr that he had a serious medical need.

268. Each and every Medical Staff Defendant had full access to Mr. Carr's medical chart and notes.

269. Given their training, experience, and subjective and objective knowledge of Mr. Carr's serious medical need, each and every Medical Staff Defendants knew that Mr. Carr was at substantial risk of serious harm.

270. Each and every Medical Staff Defendant showed deliberate indifference to Mr. Carr's serious medical need by failing to:

   a.    On November 1 through 13, 2025, acquire equivalent or the same prescriptions that Mr. Carr had previously for his heart condition;

   b.    On November 1 through 13, 2025, to research Mr. Carr's condition in light of his medical history, current opioid detox, and his increasing blood pressure while unmedicated;

   c.    On November 13, 2025, immediately call for emergency medical services when Mr. Carr, having collapsed in the exercise yard, was found to have a serious heart condition; and

   d.    On November 1 through 13, 2025, referring Mr. Carr to a cardiac specialist.

271. Each and every Medical Staff Defendant's acts and omissions were not objectively reasonable responses to Mr. Carr's serious medical need.

272. Defendant Stevic, the first medical professional to treat and review Mr. Carr's condition while incarcerated, had objective and subjective knowledge that Mr. Carr was at substantial risk of serious harm if he did not receive medical treatment on November 1 - 13, 2023.

273. But for the Medical Staff Defendant's failure to procure medical attention on November 1 - 13, 2023, Mr. Carr would have lived on November 13, 2023.

274. The conduct, custom, and policy referenced herein and in the previous paragraphs evidence deliberate indifference to Mr. Carr's serious medical need and caused Mr. Carr, starting on November 1, 2025, pain, suffering, and his death on November 13, 2023.

275. Starting on November 1, 2025, each and every Medical Staff Defendant's deliberate indifference to Mr. Carr's serious medical need was a proximate cause of Mr. Carr's pain, suffering, and death on November 13, 2023.

276. Each and every Medical Staff Defendant's deliberate indifference to Mr. Carr's serious medical need violated the rights afforded to Mr. Carr under the Eighth and Fourteenth Amendments to the United States Constitution.

277. Starting on November 1, 2025, Mr. Carr's pain, suffering, and death on November 13, 2023, were a foreseeable result of each and every Medical Staff Defendant's deliberate indifference to Mr. Carr's serious medical need.

278. As a result of the acts/omissions of each and every Medical Staff Defendant, as alleged, Plaintiffs are entitled to recover damages against each and every Medical Staff Defendant for the full value of Mr. Carr's life, Mr. Carr's pre-death pain and suffering, burial/funeral expenses, lost wages, and other special and general damages as shown by the evidence and determined by the enlightened conscious of the jury.

## Count Five – Supervisory Liability Pursuant to 42 U.S.C. § 1983 Against Defendant Owens.

279. Plaintiffs allege this count pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments.

280. Plaintiffs allege this count against Defendant Owens solely in his individual capacity.

281. At all times relevant to this lawsuit, Defendant Owens acted under color of law.

282. At all times relevant to this lawsuit, Defendant Owens was the Sheriff of Cobb County, Georgia.

283. At all times relevant to this lawsuit, Defendant Owens was the Chief Jailer of Cobb County, Georgia.

284. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of denying all inmates a safe and healthy environment.

-38-

285. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of noncompliance with the CCSO's policies, rules, regulations, and management system.

286. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of failing to provide medical care for inmates.

287. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of failing to provide inmates with access to medical treatment.

288. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of failing to ensure that the health care organization provided procedures for medical treatment without restriction for proper care.

289. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of deliberately ignoring inmates' serious medical needs, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

290. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of deliberately failing to supervise or monitor inmates with serious medical needs, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

291. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens's supervision, had a custom and practice of deliberately failing to call an ambulance for inmates, when necessary, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

292. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of deliberately failing to ensure procedures for medical treatment are provided by the health care organization, without restriction, for proper care, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

293. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens' supervision, had a custom and practice of being overcrowded and understaffed with officers and medical personnel such that Mr. Carr and others faced a substantial risk of serious harm if they had a serious medical need, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

294. In taking custody of Mr. Carr, each and every Medical Staff Defendant acted pursuant to CCSO's custom of ignoring inmates' serious medical needs.

295. During the period November 1, 2023, through November 13, 2023, Defendant Owens was aware that each and every Medical Staff Defendant followed the custom of ignoring inmates' serious medical needs.

296. Defendant Owens took no action to stop the Medical Staff Defendants from ignoring inmates' serious medical needs.

297. In taking custody of Mr. Carr, each and every Medical Staff Defendant acted pursuant to CCSO's custom of deliberately failing to supervise or monitor inmates with serious medical needs.

298. During the period November 1, 2023, through November 13, 2023, Defendant Owens was aware that each and every Medical Staff Defendant deliberately failed to supervise or monitor inmates with serious medical needs.

299. Defendant Owens took no action to stop the Medical Staff Defendants from ignoring inmates' serious medical needs.

300. In taking custody of Mr. Carr, each and every Medical Staff Defendant acted pursuant to CCSO's custom of deliberately failing to call an ambulance for inmates when necessary.

301. During the period November 1, 2023, through November 13, 2023, Defendant Owens was aware that each and every Medical Staff Defendant deliberately failed to call ambulances for inmates when necessary.

302. Defendant Owens took no action to ensure that the Medical Staff Defendants would call an ambulance for inmates when necessary.

303. Defendant Owens delegated final decisions regarding inmate healthcare to Wellpath LLC, and Wellpath LLC employees, including the Medical Staff Defendants, made those decisions and implemented the county policy.

304. Defendant Owens delegated *all* healthcare decisions to Wellpath LLC, including all custom and policy decisions, and to its employees, including the Medical Staff Defendants.

305. Plaintiffs allege no claims against Wellpath LLC in this lawsuit.

306. Defendant Owens also had a policy of underfunding CCDAC's healthcare and restricting services, including the referral of inmates such as Mr. Carr to specialists.

307. In taking custody of Mr. Carr, each and every Medical Staff Defendant acted pursuant to CCSO's custom of deliberately failing to ensure procedures for medical treatment are provided by the health care organization, without restriction, for proper care.

308. During the period of November 1, 2023, through November 13, 2023, Defendant Owens was aware that the Medical Staff Defendants deliberately failed to follow procedures for providing proper medical treatment to inmates in need.

309. During the period of November 1, 2023, through November 13, 2023, Defendant Owens was aware that CCSO did not operate in accordance with its written policies and procedures.

310. The widespread knowledge of ongoing failure to procure medical attention for inmates' serious medical needs at CCSO in the years preceding Mr. Carr's death provided Defendant Owens with subjective knowledge that CCSO would be prone to more inmate suffering and death than would be reasonable.

311. During the period November 1, 2023, through November 13, 2023, Defendant Owens had actual knowledge of violations of Mr. Carr's and other inmates' constitutional protection from cruel and unusual punishment and constitutional rights to medical treatment for serious medical needs, while incarcerated.

-43-

312. During the period November 1, 2023, through November 13, 2023, Defendant Owens had subjective and objective knowledge that the known extreme and excessive risk of failure to procure medical treatment for inmates' serious medical needs at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

313. During the period November 1, 2023, through November 13, 2023, Defendant Owens had subjective and objective knowledge that inmates' serious medical needs were being ignored at CCSO, placing inmates, like Mr. Carr, at substantial risk of serious harm.

314. During the period November 1, 2023, through November 13, 2023, Defendant Owens had subjective and objective knowledge that the lack of supervision or monitoring of inmates with serious medical needs at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

315. During the period November 1, 2023, through November 13, 2023, Defendant Owens had subjective and objective knowledge that the ongoing history of failure to procure medical treatment for inmates' serious medical needs in the CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

316. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate

-44-

indifference by failing to address and remedy these dangerous customs, problems, and violations.

317. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by failing to address and remedy these dangerous customs, problems, and violations.

318. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate indifference by failing to implement any policy to correct these dangerous customs, problems, and violations.

319. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by failing to implement any policy to correct these dangerous customs, problems, and violations.

320. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate

indifference by failing to execute any policy to correct these dangerous customs, problems, and violations.

321. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by failing to execute any policy to correct these dangerous customs, problems, and violations.

322. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate indifference by failing to train Defendants and CCSO employees.

323. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by failing to train Defendants and CCSO employees.

324. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate indifference by failing to supervise Defendants and CCSO employees.

325. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by failing to supervise Defendants and CCSO employees.

326. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate indifference by failing to re-educate Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

327. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by failing to re-educate Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

328. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate indifference by failing to retrain Defendants and CCSO employees, who

placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

329. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by failing to retrain Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

330. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate indifference by retaining Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

331. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Owens acted with deliberate indifference by retaining Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

332. Despite Defendant Owens' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at

substantial risk of serious harm, Defendant Owens acted with deliberate indifference by failing to ensure that Defendants and CCSO employees protected inmates' constitutional rights afforded to them by the United States Constitution.

333. Despite Defendant Owens's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by failing to ensure that Defendants and CCSO employees protected inmates' constitutional rights afforded to them by the United States Constitution.

334. Despite Defendant Owens's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate indifference by taking no corrective action to protect inmates' constitutional rights afforded to them by the United States Constitution.

335. Despite Defendant Owens's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Owens acted with deliberate indifference by taking no corrective action to protect inmates' constitutional rights afforded to them by the United States Constitution.

336. Despite Defendant Owens's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Owens acted with deliberate indifference by doing nothing to remedy these known and dangerous problems and violations.

337. Despite Defendant Owens's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Owens acted with deliberate indifference by doing nothing to remedy these known and dangerous problems and violations.

338. Given his POST training, experience, and subjective knowledge of previous failure to provide for inmates' serious medical needs at CCSO, Defendant Owens knew that the inmates with serious medical needs in CCDAC were at substantial risk of serious harm, including, but not limited to, Mr. Carr.

339. From November 1 through 13, 2023, Cobb County Sheriff's Office employees, including the Medical Staff Defendants, effectively ignored Mr. Carr's cardiological condition and caused him to suffer and die.

340. Beginning November 1, 2023, CCSO's above-described customs led to Mr. Carr's pain, suffering, and death on November 13, 2023.

341. Defendant Owens was the final policymaker for all procedures and customs at CCSO.

342. Defendant Owens is responsible for the customs at CCSO.

343. Defendant Owens's failure to ensure that CCSO followed its written policies and procedures led to Mr. Carr's pain, suffering, and death on November 13, 2023.

344. Prior to November 13, 2023, Defendant Owens's failure to train and supervise Cobb County Sheriff's Office employees, including the Medical Staff Defendants, who came into contact with inmates with serious medical needs, caused Mr. Carr's pain, suffering, and death.

345. From November 1 through 13, 2023, Mr. Carr was denied his constitutional protection from cruel and unusual punishment and his constitutional right to medical treatment for a serious medical need while incarcerated.

346. In failing to ensure that CCSO followed its written policies, Defendant Owens acted with deliberate indifference toward inmates' safety and life, including Mr. Carr's.

347. In allowing CCSO to maintain the above-described customs, Defendant Owens acted with deliberate indifference toward inmates' safety and life, including Mr. Carr's.

348. On November 13, 2023, Defendant Owens's acts, omissions, or failures, as alleged, were the result of a policy or the failure to have or implement a policy, and that policy or lack thereof was the moving force behind the violations of

Mr. Carr's rights afforded to him by the Eighth and Fourteenth Amendments to the United States Constitution.

349. On November 13, 2023, Defendant Owens' acts, omissions, or failures, as alleged, were a proximate cause of Mr. Carr's pain, suffering, and death.

350. Mr. Carr's pain, suffering, and death on November 13, 2023, were a foreseeable result of Defendant Owens's acts, omissions, or failures, as alleged in this Complaint.

351. As a result of the acts/omissions of Defendant Owens, as alleged, Plaintiffs are entitled to recover damages against Defendants for the full value of Mr. Carr's life, Mr. Carr's pre-death pain and suffering, burial/funeral expenses, lost wages, and other special and general damages as shown by the evidence and determined by the enlightened conscious of the jury.

**Count Six – Supervisory Liability Pursuant to 42 U.S.C. § 1983 Against Defendant Williams**

352. Plaintiffs allege this count pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments.

353. Plaintiffs allege this count against Defendant Williams solely in his individual capacity.

354. At all times relevant to this lawsuit, Defendant Williams acted under color of law.

355. At all times relevant to this lawsuit, Defendant Williams was the chief law enforcement officer in charge of CCDAC in Cobb County, Georgia.

356. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens's supervision, had a custom and practice of denying all inmates a safe and healthy environment.

357. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Williams' supervision, had a custom and practice of noncompliance with the CCSO's policies, rules, regulations, and management system.

358. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Williams' supervision, had a custom and practice of failing to provide medical care for inmates.

359. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Williams' supervision, had a custom and practice of failing to provide inmates with access to medical treatment.

360. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Owens's supervision, had a custom and practice of failing to ensure procedures for medical treatment were provided by the health care organization, without restriction, for proper care.

361.  During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Williams' supervision, had a custom and practice of deliberately ignoring inmates' serious medical needs, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

362.  During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Williams' supervision, had a custom and practice of deliberately failing to supervise or monitor inmates with serious medical needs, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

363.  During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Williams' supervision, had a custom and practice of deliberately failing to call an ambulance for inmates, when necessary, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

364.  During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Williams' supervision, had a custom and practice of deliberately failing to ensure procedures for medical treatment are provided by the health care organization, without restriction, for proper care, which constitutes deliberate

indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

365. During the period November 1, 2023, through November 13, 2023, CCSO, under Defendant Williams' supervision, had a custom and practice of being overcrowded and understaffed with officers and medical personnel such that Mr. Carr and others faced a substantial risk of serious harm if they had a serious medical need, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

366. In taking custody of Mr. Carr, each and every Medical Staff Defendant acted pursuant to CCSO's custom of ignoring inmates' serious medical needs.

367. During the period November 1, 2023, through November 13, 2023, Defendant Williams was aware that each and every Medical Staff Defendant followed the custom of ignoring inmates' serious medical needs.

368. Defendant Williams took no action to stop the Medical Staff Defendants from ignoring inmates' serious medical needs.

369. In taking custody of Mr. Carr, each and every Medical Staff Defendants acted pursuant to CCSO's custom of deliberately failing to supervise or monitor inmates with serious medical needs.

370.    During the period November 1, 2023, through November 13, 2023, Defendant Williams was aware that each and every Medical Staff Defendant deliberately failed to supervise or monitor inmates with serious medical needs.

371.    Defendant Williams took no action to stop the Medical Staff Defendants from ignoring inmates' serious medical needs.

372.    In taking custody of Mr. Carr, each and every Medical Staff Defendant acted pursuant to CCSO's custom of deliberately failing to call an ambulance for inmates when necessary.

373.    During the period November 1, 2023, through November 13, 2023, Defendant Williams was aware that each and every Medical Staff Defendant deliberately failed to call ambulances for inmates when necessary.

374.    Defendant Williams took no action to ensure that each and every Medical Staff Defendant would call an ambulance for inmates when necessary.

375.    In taking custody of Mr. Carr, each and every Medical Staff Defendants acted pursuant to CCSO's custom of deliberately failing to ensure procedures for medical treatment are provided by the health care organization, without restriction, for proper care.

376.    During the period November 1, 2023, through November 13, 2023, Defendant Williams was aware that each and every Medical Staff Defendant deliberately

failed to follow procedures for procuring proper medical treatment for inmates in need.

377.    During the period of November 1 2023, through November 13, 2023, Defendant Williams was aware that CCSO did not operate in accordance with its written policies and procedures.

378.    The widespread knowledge of ongoing failure to procure medical attention for inmates' serious medical needs at CCSO in the years preceding Mr. Carr's death provided Defendant Williams with subjective knowledge that CCSO would be prone to more inmate suffering and death than would be reasonable.

379.    During the period November 1, 2023, through November 13, 2023, Defendant Williams had actual knowledge of violations of Mr. Carr's and other inmates' constitutional protection from cruel and unusual punishment and constitutional rights to medical treatment for serious medical needs, while incarcerated.

380.    During the period November 1, 2023, through November 13, 2023, Defendant Williams had subjective and objective knowledge that the known extreme and excessive risk of failure to procure medical treatment for inmates' serious medical needs at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

381.    During the period November 1, 2023, through November 13, 2023, Defendant Williams had subjective and objective knowledge that inmates' serious medical

needs were being ignored at CCSO, placing inmates, like Mr. Carr, at substantial risk of serious harm.

382. During the period November 1, 2023, through November 13, 2023, Defendant Williams had subjective and objective knowledge that the lack of supervision or monitoring of inmates with serious medical needs at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

383. During the period November 1, 2023, through November 13, 2023, Defendant Williams had subjective and objective knowledge that the lack of health evaluations and health observations of inmates at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

384. During the period November 1, 2023, through November 13, 2023, Defendant Williams had subjective and objective knowledge that an ongoing history of failure to procure medical treatment for inmates' serious medical needs in the CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

385. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Williams acted with deliberate indifference by failing to address and remedy these dangerous customs, problems, and violations.

386. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their

constitutional rights, Defendant Williams acted with deliberate indifference by failing to address and remedy these dangerous customs, problems, and violations.

387. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Williams acted with deliberate indifference by failing to implement any policy to correct these dangerous customs, problems, and violations.

388. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by failing to implement any policy to correct these dangerous customs, problems, and violations.

389. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Williams acted with deliberate indifference by failing to execute any policy to correct these dangerous customs, problems, and violations.

390. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Williams acted with deliberate indifference by

failing to execute any policy to correct these dangerous customs, problems, and violations.

391. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Williams acted with deliberate indifference by failing to train Defendants and CCSO employees.

392. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by failing to train Defendants and CCSO employees.

393. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Williams acted with deliberate indifference by failing to supervise Defendants and CCSO employees.

394. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by failing to supervise Defendants and CCSO employees.

395. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial

risk of serious harm, Defendant Williams acted with deliberate indifference by failing to re-educate Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

396. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by failing to re-educate Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

397. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Williams acted with deliberate indifference by failing to retrain Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

398. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by failing to retrain Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

399. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial

risk of serious harm, Defendant Williams acted with deliberate indifference by retaining Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

400. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by retaining Defendants and CCSO employees, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

401. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Williams acted with deliberate indifference by failing to ensure that Defendants and CCSO employees protected inmates' constitutional rights afforded to them by the United States Constitution.

402. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by failing to ensure that Defendants and CCSO employees protected inmates' constitutional rights afforded to them by the United States Constitution.

403. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial

risk of serious harm, Defendant Williams acted with deliberate indifference by taking no corrective action to protect inmates' constitutional rights afforded to them by the United States Constitution.

404. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by taking no corrective action to protect inmates' constitutional rights afforded to them by the United States Constitution.

405. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Williams acted with deliberate indifference by doing nothing to remedy these known and dangerous problems and violations.

406. Despite Defendant Williams' subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Williams acted with deliberate indifference by doing nothing to remedy these known and dangerous problems and violations.

407. Given his POST training, experience, and subjective knowledge of previous failure to provide for inmates' serious medical needs at CCSO, Defendant Williams knew that the inmates with serious medical needs in CCDAC were at substantial risk of serious harm, including, but not limited to, Mr. Carr.

408.   Beginning on November 1 through 13, 2023, Cobb County Sheriff's Office employees, including each and every Medical Staff Defendant, effectively ignored Mr. Carr's cardiological condition and caused him to suffer and die.

409.   Beginning on November 1, 2023, CCSO's above-described customs led to Mr. Carr's pain, suffering, and death on November 13, 2023.

410.   Defendant Williams was the final policymaker for all procedures and customs at CCSO.

411.   Defendant Williams is responsible for the customs at CCSO.

412.   Defendant Williams' failure to ensure that CCSO followed its written policies and procedures led to Mr. Carr's pain, suffering, and death on November 13, 2023.

413.   Prior to November 13, 2023, Defendant Williams' failure to train and supervise Cobb County Sheriff's Office employees, including the Medical Staff Defendants who came into contact with inmates with serious medical needs, caused Mr. Carr's pain, suffering, and death.

414.   Beginning on November 1 through 13, 2023,  was denied his constitutional protection from cruel and unusual punishment and constitutional right to medical treatment for a serious medical need, while incarcerated.

415. In failing to ensure that CCSO followed its written policies, Defendant Williams acted with deliberate indifference toward inmates' safety and life, including Mr. Carr's.

416. In allowing CCSO to maintain the above-described customs, Defendant Williams acted with deliberate indifference toward inmates' safety and life, including Mr. Carr's.

417. On November 13, 2023, Defendant Williams' acts, omissions, or failures, as alleged, were the result of a policy or the failure to have or implement a policy, and that policy or lack thereof was the moving force behind the violations of Mr. Carr's rights afforded to him by the Eighth and Fourteenth Amendments to the United States Constitution.

418. Beginning on November 1 through 13, 2023, Defendant Williams' acts, omissions, or failures, as alleged, were a proximate cause of Mr. Carr's pain, suffering, and death.

419. Beginning on November 1, 2023, Mr. Carr's pain, suffering, and death on November 13, 2023, were a foreseeable result of Defendant Williams' acts, omissions, or failures, as alleged in this Complaint.

420. As a result of the acts/omissions of Defendant Williams, as alleged, Plaintiffs are entitled to recover damages against Defendants for the full value of Mr. Carr's life, Mr. Carr's pre-death pain and suffering, burial/funeral expenses, lost wages

and other special and general damages as shown by the evidence and determined by the enlightened conscious of the jury.

### Count Seven – Supervisory Liability Pursuant to 42 U.S.C. § 1983 Against Defendant Todd

421. Plaintiffs allege this count pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments.

422. Plaintiffs allege this count against Defendant Todd solely in her individual capacity.

423. At all times relevant to this lawsuit, Defendant Todd acted under color of law.

424. Plaintiffs assert claims against Defendant Todd for supervisory liability claims pursuant to 42 U.S.C. § 1983.

425. At all times relevant to this lawsuit, Defendant Todd was the Physician in Charge of the CCSO Jail infirmary in Cobb County, Georgia, from November 1 through November 13, 2025.

426. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of denying all inmates unimpeded access to all healthcare services to meet their serious medical needs.

427. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of not documenting anything in inmates' health care records.

428. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of denying all inmates a safe and healthy environment.

429. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of noncompliance with the medical policies, rules, regulations, and management system.

430. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of failing to call an ambulance when necessary.

431. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of failing to provide medical care for inmates.

432. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of failing to provide inmates with access to medical treatment.

433. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of failing to ensure procedures for medical treatment are provided by the health care organization, without restriction, for proper care.

434. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of deliberately ignoring inmates' serious medical needs, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

435. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of deliberately failing to supervise or monitor inmates with serious medical needs, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

436. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of deliberately failing to call an ambulance for inmates, when necessary, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

437. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of deliberately failing to ensure procedures for medical treatment are provided

by the health care organization, without restriction, for proper care, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

438. During the period November 1, 2023, through November 13, 2023, CCDAC medical staff, under Defendant Todd's supervision, had a custom and practice of being overcrowded and understaffed with officers and medical personnel such that Mr. Carr and others faced a substantial risk of serious harm if they had a serious medical need, which constitutes deliberate indifference to inmates' constitutional rights, and was the moving force causing Mr. Carr's pain, suffering, and death on November 13, 2023.

439. In taking custody of Mr. Carr, Defendant Todd acted pursuant to CCDAC's custom of ignoring inmates' serious medical needs.

440. During the period November 1, 2023, through November 13, 2023, Defendant Todd was aware that the Medical Staff Defendants followed the custom of ignoring inmates' serious medical needs.

441. Defendant Todd took no action to stop the Medical Staff Defendants from ignoring inmates' serious medical needs.

442. In taking custody of Mr. Carr, the Medical Staff Defendants acted pursuant to CCDAC's custom of deliberately failing to supervise or monitor inmates with serious medical needs.

443. During the period November 1, 2023 through November 13, 2023, Defendant Todd was aware that the Medical Staff Defendants deliberately failed to supervise or monitor inmates with serious medical needs.

444. Defendant Todd took no action to stop the Medical Staff Defendants from ignoring inmates' serious medical needs.

445. In taking custody of Mr. Carr, the Medical Staff Defendants acted pursuant to CCDAC's custom of deliberately failing to call an ambulance for inmates, when necessary.

446. During the period November 1, 2023, through November 13, 2023, Defendant Todd was aware that the Medical Staff Defendants deliberately failed to call ambulances for inmates when necessary.

447. Defendant Todd took no action to ensure that the Medical Staff Defendants would call an ambulance for inmates when necessary.

448. In taking custody of Mr. Carr, the Medical Staff Defendants acted pursuant to CCDAC's custom of deliberately failing to ensure procedures for medical treatment are provided by the health care organization, without restriction, for proper care.

449. During the period November 1, 2023, through November 13, 2023, Defendant Todd was aware that the Medical Staff Defendants deliberately failed to follow procedures for procuring proper medical treatment for inmates in need.

450. During the period November 1, 2023, through November 13, 2023, Defendant Todd was aware that CCDAC medical personnel did not operate according to its written policies and procedures.

451. The widespread knowledge of ongoing failure to procure medical attention for inmates' serious medical needs at CCSO in the years preceding Mr. Carr's death provided Defendant Todd with subjective knowledge that CCSO would be prone to more inmate suffering and death than would be reasonable.

452. During the period November 1, 2023, through November 13, 2023, Defendant Todd had actual knowledge of violations of Mr. Carr's and other inmates' constitutional protection from cruel and unusual punishment and constitutional rights to medical treatment for serious medical needs, while incarcerated.

453. During the period November 1, 2023, through November 13, 2023, Defendant Todd had subjective and objective knowledge that the known extreme and excessive risk of failure to procure medical treatment for inmates' serious medical needs at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

454. During the period November 1, 2023, through November 13, 2023, Defendant Todd had subjective and objective knowledge that inmates' serious medical needs being ignored at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

455. During the period November 1, 2023, through November 13, 2023, Defendant Todd had subjective and objective knowledge that the lack of supervision or monitoring of inmates with serious medical needs at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

456. During the period November 1, 2023, through November 13, 2023, Defendant Todd had subjective and objective knowledge that the lack of health evaluations and health observations of inmates at CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

457. During the period November 1, 2023, through November 13, 2023, Defendant Todd had subjective and objective knowledge that ongoing history of failure to procure medical treatment for inmates' serious medical needs in the CCSO placed inmates, like Mr. Carr, at substantial risk of serious harm.

458. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by

failing to address and remedy these dangerous customs, problems, and violations.

459. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Todd acted with deliberate indifference by failing to address and remedy these dangerous customs, problems, and violations.

460. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by failing to implement any policy to correct these dangerous customs, problems, and violations.

461. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Todd acted with deliberate indifference by failing to implement any policy to correct these dangerous customs, problems, and violations.

462. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by

failing to execute any policy to correct these dangerous customs, problems, and violations.

463. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Todd acted with deliberate indifference by failing to execute any policy to correct these dangerous customs, problems, and violations.

464. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by failing to train the Medical Staff Defendants and CCDAC medical staff.

465. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Todd acted with deliberate indifference by failing to train the Medical Staff Defendants and CCDAC medical staff.

466. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by failing to supervise the Medical Staff Defendants and CCDAC medical staff.

467. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Todd acted with deliberate indifference by failing to supervise the Medical Staff Defendants and CCDAC medical staff.

468. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by failing to re-educate the Medical Staff Defendants and CCDAC medical staff, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

469. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Todd acted with deliberate indifference by failing to re-educate the Medical Staff Defendants and CCDAC medical staff, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

470. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by failing to retrain the Medical Staff Defendants and CCDAC medical staff,

who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

471. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Todd acted with deliberate indifference by failing to retrain the Medical Staff Defendants and CCDAC medical staff, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

472. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by retaining the Medical Staff Defendants and CCDAC medical staff, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

473. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights Defendant Todd acted with deliberate indifference by retaining the Medical Staff Defendants and CCDAC medical staff, who placed inmates at substantial risk of serious harm and violated inmates' constitutional rights.

474. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by failing to ensure that each and every Medical Staff Defendant and CCDAC medical staff protected inmates' constitutional rights afforded to them by the United States Constitution.

475. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Todd acted with deliberate indifference by failing to ensure that each and every Medical Staff Defendant and CCDAC medical staff protected inmates' constitutional rights afforded to them by the United States Constitution.

476. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by taking no corrective action to protect inmates' constitutional rights afforded to them by the United States Constitution.

477. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Todd acted with deliberate indifference by

taking no corrective action to protect inmates' constitutional rights afforded to them by the United States Constitution.

478. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations placed inmates at substantial risk of serious harm, Defendant Todd acted with deliberate indifference by doing nothing to remedy these known and dangerous problems and violations.

479. Despite Defendant Todd's subjective and objective knowledge that the above-mentioned customs, problems, and violations deprived inmates of their constitutional rights, Defendant Todd acted with deliberate indifference by doing nothing to remedy these known and dangerous problems and violations.

480. Given her medical training, experience, and subjective knowledge of previous failure to provide for inmates' serious medical needs at CCSO, Defendant Todd knew that the inmates with serious medical needs in CCDAC were at substantial risk of serious harm, including, but not limited to, Mr. Carr.

481. On November 1 through 13, 2023, CCDAC medical staff, including each and every Medical Staff Defendant, failed to address Mr. Carr's medical vulnerabilities and prescription requirements.

482. Beginning on November 1, 2023, CCDAC's above-described customs led to Mr. Carr's pain, suffering, and death on November 13, 2023.

483. Defendant Todd was a policymaker for medical procedures and customs at CCDAC.

484. Defendant Todd is responsible for medical custody at CCDAC.

485. Beginning on November 1, 2023, Defendant Todd's failure to ensure that CCDAC medical staff followed written policies and procedures led to Mr. Carr's pain, suffering, and death on November 13, 2023.

486. From November 1 through 13, 2023, Defendant Todd's failure to train and supervise CCDAC medical staff, including each and every Medical Staff Defendant, who came into contact with inmates with serious medical needs, caused Mr. Carr's pain, suffering, and death.

487. From November 1 through 13, 2023, Mr. Carr was denied his constitutional protection from cruel and unusual punishment and his constitutional right to medical treatment for a serious medical need while incarcerated.

488. In failing to ensure that CCDAC medical staff at CCSO followed its written policies, Defendant Todd acted with deliberate indifference toward inmates' safety and life, including Mr. Carr's.

489. In allowing CCDAC medical staff at CCSO to maintain the above-described customs, Defendant Todd acted with deliberate indifference toward inmates' safety and life, including Mr. Carr's.

490. From November 1 through 13, 2023, Defendant Todd's acts, omissions, or failures, as alleged, were the result of a policy or the failure to have or implement a policy, and that policy or lack thereof was the moving force behind the violations of Mr. Carr's rights afforded to him by the Eighth and Fourteenth Amendments to the United States Constitution.

491. From November 1 through 13, 2023, Defendant Todd's acts, omissions, or failures, as alleged, were a proximate cause of Mr. Carr's pain, suffering, and death.

492. Beginning on November 1, 2023, Mr. Carr's pain, suffering, and death on November 13, 2023, were a foreseeable result of Defendant Todd's acts, omissions, or failures, as alleged in this Complaint.

493. As a result of the acts/omissions of Defendant Todd, as alleged, Plaintiffs are entitled to recover damages against Defendants for the full value of Mr. Carr's life, Mr. Carr's pre-death pain and suffering, burial/funeral expenses, lost wages, and other special and general damages as shown by the evidence and determined by the enlightened conscience of the jury.

**WHEREFORE**, Plaintiffs pray:

A. That all special and general damages be awarded to Plaintiffs in an amount shown by the evidence and determined by the enlightened conscious of the jury including but not limited to the full value of Mr. Carr's life, Mr. Carr's pre-death pain and suffering, burial/funeral expenses, lost wages and other special and general damages as shown by the evidence and determined by the enlightened conscious of the jury;

B. That punitive damages be awarded against Defendants when allowable by law in an amount to be determined by the enlightened conscience of the jury to punish these Defendants and deter Defendants and others from similar misconduct in the future;

C. That a trial by jury be had on all issues permitted;

D. That attorneys' fees and expenses of litigation be awarded as authorized under the law;

E. Such other further equitable or monetary relief as the Court deems just and proper.

-82-

Dated:        November 13, 2025.

**HALL & LAMPROS, LLP**

*/s/ Andrew Lampros*
Andrew Lampros
Ga. Bar #432328
Devin R. Horowitz
Ga. Bar #551617

300 Galleria Parkway SE
Suite 300
Atlanta, GA 30339
Tel.: (404) 876-8100
Fax: (404) 876-3477
alampros@hallandlampros.com
devin@hallandlampros.com
*Counsel for Plaintiff*