**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| EMILY MCKINLEY, *as the administratrix of the* ESTATE OF FERNANDO CARR, *deceased*, and LARRY BERNARD CARR, JR., *individually*;<br>Plaintiffs,<br>v.<br>CRAIG D. OWENS, *et al.*,<br>Defendants. | Civil Action No.<br>1:25-cv-06533-SDG |

**OPINION AND ORDER**

This matter is before the Court on the following motions:

- Defendant Dr. Natalia Todd's motion for more definite statement [ECF 42];

- Dr. Todd's motion to dismiss Plaintiffs' amended complaint [ECF 99];

- Defendant non-physician healthcare providers' motion to dismiss Plaintiffs' amended complaint [ECF 98];[1]

- Defendants Cobb County Sheriff Craig D. Owens, Sr. and Deputy Colonel Michael A. Williams's motion to dismiss Plaintiffs' amended complaint [ECF 100];

- Dr. Todd and the non-physician healthcare providers' motion for joinder [ECF 101];

1 By name, these Defendants are Abosede Osarieme Osagie, Julie-Ann Antoinette Forbes, Kofi Nketsiah Turkson, Jemimah Nancy Ndege, Brooke Stevic, Lisa Wiley, Tyranissium Ephion, Bailey Palmer, Barbara Rico-Eccles, Jafmin Oscar, Ahilia Muhammad, Shanita Swaby, Kala Monai Sims, Demita Shelton, Melissa Huller, Bettie Agyekum, Tammy Sue Collis, Antonelda Mcfarlane, Stephanie Campbell, Nkolika Obichi, and Ingrid Davis. ECF 92, at 2, ¶ 1.

- Dr. Todd and the non-physician healthcare providers' motion to stay [ECF 105]; and

- Dr. Todd and the non-physician healthcare providers' motion to amend [ECF 115].

For the following reasons, Owens and Williams's motion to dismiss [ECF 100] is **GRANTED**. Dr. Todd's motion to dismiss [ECF 99] is **DENIED**. Defendant non-physician healthcare providers' motion to dismiss [ECF 98] is **GRANTED IN PART** and **DENIED IN PART**. Dr. Todd and the remaining non-physician healthcare providers' motion for joinder [ECF 101] is **DENIED**. Dr. Todd's motion for more definite statement [ECF 42] and her and the remaining non-physician healthcare providers' motion to stay [ECF 105] and motion to amend [ECF 115] are **DENIED AS MOOT**.

## I. INTRODUCTION

### A. Factual Background[2]

This case arises from the death of an inmate at a correctional facility. Plaintiffs Emily McKinley and Larry Bernard Carr, Jr. are the parents of Fernando

---

2 For purposes of Defendants' motions to dismiss, the Court treats Plaintiffs' well-pleaded allegations as true. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). These facts are taken from Plaintiffs' amended complaint. ECF 92. The facts are not numbered in sequential order (*e.g.*, fact 44 follows fact 68; fact 47 follows fact 49). This makes it exceedingly difficult for the Court to reference and cite Plaintiffs' amended complaint; reflects sloppiness on the part of Plaintiffs' counsel; and has the potential to confuse

Carr, with Emily serving as the administratrix of Fernando's estate.[3] Defendants are medical staff employed at the Cobb County Adult Detention Center (CCADC) at the time of the events giving rise to this lawsuit, as well as Cobb County Sheriff's Office officials.[4]

On November 1, 2023, Fernando was arrested for possession of a firearm and possession of a controlled substance after a routine traffic stop in Cobb County.[5] At the time of his arrest, Fernando was 29 years old, had a history of high blood pressure and heart disease, and had undergone cardiac surgery.[6] After his arrest, Fernando was held at CCADC.[7]

During a preliminary health check, Defendant Brooke Stevic, a CCADC paramedic, confirmed with Fernando that he had a cardiac condition, which triggered an alert for "chronic care" in CCADC's health record system.[8] Stevic also noted in medical records that Fernando had suffered a "[myocardial infarction]

the substantive record in this case. Plaintiffs' counsel are advised to pay closer attention to the organization and format of future submissions to the Court.

3 *Id*. at 5, ¶¶ 17–18.

4 *Id*. at 5–11, ¶¶ 21–66.

5 *Id*. at 13, ¶¶ 47–48.

6 *Id*. at 13, ¶¶ 49–50.

7 *Id*. at 13, ¶ 51.

8 *Id*. at 14, ¶¶ 52–53.

earlier [in 2023] treated at Piedmont Hospital."[9] No Defendant ever contacted Piedmont Hospital to inquire about Fernando's medical history.[10]

Stevic further confirmed with Fernando that he was prescribed and supposed to be taking an opioid and a number of prescription medications for his cardiac condition.[11] Later, after reading and annotating Fernando's medical chart, Defendant Nurse Julie-Ann Antoinette Forbes contacted Fernando's pharmacy to confirm that he had been prescribed an opioid and cardiac medications.[12] Forbes never ordered this medication for Fernando, and instead prescribed low-grade aspirin.[13] Defendant Nurse Bettie Agyekum likewise ordered non-prescription medications for Fernando instead of his cardiac medications, and Defendant Nurse Abosede Osarieme Osagie also saw Fernando at this time for additional health screenings.[14] Without conducting additional outreach and research about Fernando's condition, Dr. Todd eventually approved a prescription for over-the-counter medications for Fernando, rather than his previously prescribed

---

9 *Id*. at 14, ¶ 54. "Myocardial infarction" is the medical term for a heart attack. *Id*. at 14, ¶¶ 54, 56.

10 *Id*. at 18, ¶ 69.

11 *Id*. at 14–15, ¶¶ 57–61.

12 *Id*. at 16, ¶¶ 70–71.

13 *Id*. at 17, ¶¶ 73–74.

14 *Id*. at 16, ¶¶ 66, 69.

medications.[15] Throughout his time at CCADC, Fernando was not provided with his prescription medications even after he repeatedly requested them and displayed emotional distress about not receiving them.[16]

Over the course of a week in custody, Fernando's blood pressure was monitored by various Defendant non-physician healthcare providers.[17] Fernando's blood pressure readings worsened during his last three days in custody, allegedly as a result of him not receiving his prescription medications.[18] Defendants eventually stopped monitoring Fernando's blood pressure.[19]

Six days after his last blood pressure reading, Fernando collapsed and was taken to the infirmary.[20] At the time he was admitted to the infirmary, Fernando was lethargic, sweating excessively, and exhibiting seizure symptoms.[21] He eventually became unresponsive and stopped breathing.[22] Staff applied a

---

15 *Id*. at 16, ¶ 67; at 19–20, ¶¶ 77–81.

16 *Id*. at 15, ¶ 63; at 17, ¶ 72; at 34, ¶ 158.

17 *Id*. at 20, ¶ 82. The Defendants who administered blood pressure tests on Fernando include Osagie, Stevic, Rico-Eccles, Oscar, Swaby, Sims, Shelton, and Huller.

18 *Id*. at 21, ¶ 84.

19 *Id*. at 22, ¶ 88.

20 *Id*. at 25, ¶¶ 98–99.

21 *Id*. at 25, ¶ 100.

22 *Id*.

defibrillator to Fernando several times.[23] He was subsequently transported to a local hospital, where he was declared dead.[24] Fernando's cause of death was "hypertensive and atherosclerotic cardiovascular disease."[25]

### B. Procedural Background

Plaintiffs filed suit in November 2025 and filed their amended complaint on January 29, 2026.[26] The amended complaint brings the following claims:

- Professional negligence against Dr. Todd and the non-physician healthcare providers under O.C.G.A. § 51-1-27;
- Wrongful death against Dr. Todd and the non-physician healthcare providers under O.C.G.A. § 51-4-2;
- Deliberate indifference to serious medical needs against Dr. Todd and the non-physician healthcare providers under 42 U.S.C. § 1983; and
- Supervisory liability against Dr. Todd, Owens, and Williams under 42 U.S.C. § 1983.[27]

Emily brings these claims in her capacity as administratrix of Fernando's estate, while Larry brings the claims in his individual capacity as Fernando's father.[28]

---

23 *Id*. at 26, ¶ 107.

24 *Id*. at 25, ¶¶ 101–102.

25 *Id*. at 25, ¶ 103.

26 ECFs 1, 92.

27 ECF 92, at 39–64, ¶¶ 173–256.

28 *Id*. at 5, ¶¶ 17–20. Although it is unclear from Plaintiffs' complaint, Emily appears to be proceeding only in her capacity as administratrix of the estate, and not in her individual capacity. *Id*.

On February 12, Owens and Williams filed their motion to dismiss Plaintiffs' amended complaint for failure to state a claim.[29] For their part, Dr. Todd and the non-physician healthcare providers have filed a dizzying array of motions—specifically, on February 11, two separate motions to dismiss for failure to state a claim;[30] on February 12, a combined motion for joinder, which in substance is an additional motion to dismiss for failure to state a claim;[31] on March 2, a motion to stay;[32] and on May 5, a motion to amend their motions to dismiss.[33] These motions are ripe for resolution.

## II. DEFENDANTS' MOTIONS TO DISMISS

The Court must resolve three separate motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6): one filed by Owens and Williams, one filed by Dr. Todd, and one filed by the remaining non-physician healthcare providers.[34]

### A. Legal Standard

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual

---

29 ECF 100.

30 ECFs 98, 99.

31 ECF 101.

32 ECF 105.

33 ECF 115.

34 ECFs 98, 99, 100.

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is satisfied when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 322 (11th Cir. 2009) (citation modified).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Discussion

### 1. Section 1983 Claims for Deliberate Indifference and Supervisory Liability

#### *i.* Plaintiff Larry Bernard Carr, Jr. lacks standing to bring § 1983 claims on Fernando's behalf.

As a preliminary matter, the complaint appears to bring § 1983 claims by both Emily and Larry.[35] Emily brings her claims as the administratrix of Fernando's estate, but Larry brings his claims in his individual capacity as Fernando's father.[36] With limited exceptions, "[p]laintiffs generally must assert their own legal rights and interests rather than the legal rights and interests of third parties." *Hull v. Cap. Funding*, No. 1:25-CV-00130-SEG, 2025 WL 3306433, at *2 (N.D. Ga. Oct. 29, 2025); *see also Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987) (Courts consider "whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties" when evaluating constitutional standing). Moreover, courts nationwide have held that parents may not bring § 1983 claims to vindicate the constitutional rights of their children, and may only bring claims for violations of their own constitutional rights. *See Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 734 (S.D.N.Y. 2006) ("[P]arents lack standing to bring individual claims under § 1983 based

---

35 ECF 92.

36 *Id.* at 5, ¶¶ 17–20.

solely upon deprivation of a child's constitutional rights."); *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) ("[Mother] lacks standing to bring individual claims under § 1983 based upon a deprivation of her daughter's constitutional rights."); *Burrow ex rel. Burrow v. Postville Cmty. Sch. Dist.*, 929 F. Supp. 1193, 1208 (N.D. Iowa 1996) ("Parents lack standing to bring individual claims under § 1983 based upon a deprivation of [their child's] constitutional rights . . . . Parents have not asserted that the Defendants deprived them of any of their own constitutional rights."); *Rucker ex rel. Rucker v. Smith*, No. 8:17CV364, 2018 WL 400761, at *2 (D. Neb. Jan. 12, 2018). Larry does not appear to bring the § 1983 claims here for vindication of his own constitutional rights.[37] Accordingly, Larry's § 1983 claims must be dismissed.

Emily's § 1983 standing fares better. "[T]he estate of a deceased may assert a 42 U.S.C. § 1983 claim for violation of the deceased's civil rights." *Smith v. Jackson Hosp.*, No. 2:21-CV-238-RAH-SMD, 2022 WL 2111839, at *3 n.7 (M.D. Ala. May 18, 2022). Emily proceeds solely as the administratrix of Fernando's estate and is seeking vindication of Fernando's constitutional rights on his behalf.[38] Accordingly, Emily has standing to bring the § 1983 deliberate indifference and supervisory liability claims.

---

[37] *Id*. at 5, ¶ 17.

[38] *Id*. at 5, ¶¶ 18, 20.

### *ii.* Deliberate Indifference

Emily brings § 1983 constitutional claims against Dr. Todd and the non-physician healthcare providers for deliberate indifference to serious medical needs under the Eighth Amendment.[39] To state this claim, a plaintiff must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citation omitted). As to the first prong, the parties do not dispute that Fernando's cardiac condition qualifies as a serious medical need.[40] A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). Fernando's diagnosed cardiac condition clearly qualifies under that standard.

Next, to establish deliberate indifference, a plaintiff must allege facts to show: (1) a "deprivation that was, objectively, sufficiently serious" and (2) "the defendant acted with subjective recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (citation modified). A plaintiff must show "that the defendant was actually, subjectively aware that his own conduct

---

[39] *Id*. at 43–45, ¶¶ 192–201.

[40] ECF 108, at 13; ECF 109, at 13; ECF 110, at 11.

caused a substantial risk of serious harm." *Id*. However, a defendant cannot be found liable—"even if the defendant actually knew of a substantial risk to inmate health or safety"—if the defendant "responded reasonably to the risk." *Id*. (citation modified). "Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (citation omitted).

Before turning to Emily's specific allegations as to Defendants' deliberate indifference, the Court notes that Emily fails to plead any facts about the conduct of many of the Defendant non-physician healthcare providers, including Turkson, Ndege, Wiley, Ephion, Palmer, Muhammad, Collis, Mcfarlane, Campbell, Obichi, and Davis. Further, Emily makes only limited allegations against a number of the other Defendant non-physician healthcare providers, including Osagie, Rico-Eccles, Oscar, Swaby, Sims, Shelton, Agyekum, and Huller. As to these Defendants, Emily only alleges that they briefly saw Fernando, ordered over-the-counter medications for him, or administered blood pressure tests.[41] These allegations fail to demonstrate that these Defendants had specific knowledge about Fernando's medical condition or that his condition was extraordinarily

---

41 ECF 92, at 16, ¶¶ 66, 69; at 20, ¶ 82; at 37, ¶ 166.

grave. Accordingly, Emily has failed to state a claim against these Defendants, and her § 1983 deliberate indifference claims against them are dismissed.

Defendants Dr. Todd, Stevic, and Forbes remain, and Emily has alleged specific facts sufficient to state a § 1983 claim for deliberate indifference against each of them. Specifically, Emily pleaded that these Defendants had subjective knowledge that their lack of sufficient medical treatment for Fernando's condition could result in his serious injury or death. For example, Emily alleges that Stevic personally confirmed Fernando's cardiac condition and medical history with him and recorded these conditions in his medical records.[42] Emily further alleges that Forbes contacted Fernando's pharmacy to confirm that he had been prescribed cardiac medication, and that instead of ordering these medications, she simply ordered over-the-counter medications instead.[43] Finally, Emily alleges that Dr. Todd approved these deficient medication orders despite her full and documented knowledge of Fernando's serious medical condition.[44] These allegations plausibly contend that these Defendants knew Fernando had a history of serious cardiac issues; were aware that Fernando's condition could worsen

42 *Id*. at 14, ¶¶ 52–54.

43 *Id*. at 16, ¶¶ 70–71; at 17, ¶¶ 73–74.

44 *Id*. at 16, ¶ 67; at 19–20, ¶¶ 77–81.

without appropriate treatment; and that they failed to take action.[45] Further, Emily alleges that Fernando repeatedly, directly, and sometimes with great "emotional upset" requested his medications and appropriate medical treatment, explaining that he needed it to survive.[46] In response to Fernando's pleas, Emily alleges that these Defendants denied his requests and provided him only with over-the-counter medications instead.[47]

In response, Dr. Todd and the non-physician healthcare providers argue that their provision of some treatments negates a finding of deliberate indifference.[48] Indeed, the Eleventh Circuit has held that, even if a defendant "knew of a substantial risk to inmate health or safety," the defendant cannot be found deliberately indifferent if he "responded reasonably to that risk." *Wade*, 106 F.4th at 1262 (citation omitted). While Emily acknowledges that Fernando received at least some medical treatment at CCADC, she also contends that the care he received was not appropriate or reasonable given his known and documented cardiac and other health conditions. Further, the majority of the treatments identified by Defendants as examples of care that Fernando received, like "rapid

---

45 *Id*. at 44, ¶ 194.

46 *Id*. at 17, ¶ 72; at 33–34, ¶¶ 155–159.

47 *Id*. at 14, ¶ 57; at 16, ¶ 67; at 17, ¶¶ 72–74; at 33–34, ¶¶ 155–159.

48 ECF 98, at 9; ECF 99, at 14.

response," "EMS activation," and "attempted resuscitation," describe treatments taken to revive Fernando after he was already in the throes of a dire medical crisis that arose from Defendants' alleged deliberate indifference to his serious medical needs over the course of many days.[49]

Accordingly, the Court declines to conclude at this stage that the treatments provided to Fernando were reasonable as a matter of law given the alleged risks he faced and these Defendants' knowledge of those risks. Because these allegations state a claim, Emily's deliberate indifference causes of action against Dr. Todd, Stevic, and Forbes survive dismissal.

#### ***iii.*** **Supervisory Liability**

Emily also brings supervisory liability claims against Dr. Todd, Owens, and Williams under § 1983.[50] Generally, the supervisory liability standard is "extremely rigorous." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019) (citation omitted). Supervisory officials "are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). Rather, "[s]upervisors can be held personally liable [only] when either (1) the supervisor personally

---

49 ECF 99, at 15.

50 ECF 92, at 46–64, ¶¶ 202–256.

participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009).

### *a.* Supervisory Liability Claim Against Dr. Todd

Dr. Todd does not move to dismiss the supervisory claim against her in her first-filed motion to dismiss.[51] Regardless, Emily has adequately stated that claim by alleging that Dr. Todd personally participated in depriving Fernando of reasonable and necessary medical treatment. Specifically, that Dr. Todd, acting in her role as supervisor of medical staff at CCADC, approved only over-the-counter medications for Fernando, rather than his prescribed opioid and cardiac medications, and that she and her staff failed to contact his physicians even though they were aware of Fernando's health conditions and medical history.[52] These allegations make clear that Dr. Todd personally had a hand in the purported constitutional violations, and thus adequately plead her supervisory liability. Emily's supervisory liability claim against Dr. Todd survives dismissal.

---

51 ECF 99. The Court notes that Dr. Todd appears to make a very limited attempt to defend against this claim in her motion for joinder, which the court construes as a second motion to dismiss. ECF 101. Since that successive motion violates the Federal Rules of Civil Procedure, the Court will not consider its arguments.

52 ECF 92, at 16, ¶ 67; at 18, ¶¶ 66–67; at 20, ¶¶ 79, 81; at 57–64, ¶¶ 236–256.

### *b.* Supervisory Liability Claims Against Owens and Williams

Unlike Dr. Todd, Owens and Williams vigorously argue for dismissal of the supervisory liability claims against them.[53] Those claims are primarily premised on Owens and Williams's "custom and practice" of creating an unsafe and medically negligent carceral environment at CCADC and their failure to create or implement policies that would have protected Fernando and similarly situated inmates from such neglect.[54] Emily further alleges that Owens and Williams had actual knowledge that inmates like Fernando were not receiving appropriate medical care, but failed to correct this problem.[55]

Emily does not allege that Owens or Williams personally participated in depriving Fernando of medical care. Therefore, the Court focuses on whether Emily has adequately alleged a "causal connection between the actions of the supervisor and the alleged constitutional violation." *Mann*, 588 F.3d at 1308. "A causal connection may be established: (1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) when a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) when facts support an inference that the

---

53 ECF 100.

54 ECF 92, at 46–57, ¶¶ 202–235.

55 *Id*. at 48, ¶ 209; at 53, ¶ 227.

supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Young v. Fleming*, 146 F. App'x 393, 395 (11th Cir. 2005) (citation omitted).

To satisfy this standard at the pleading stage, Emily must plausibly allege that Fernando's mistreatment was not a singular event. For example, to establish "a history of widespread abuse," Emily must allege that deprivations "sufficient to notify the supervising official [were] obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (citation omitted). Similarly, to allege that a "policy or custom resulted in deliberate indifference to constitutional rights," Emily "must point to multiple incidents . . . or multiple reports of prior misconduct by a particular employee." *Piazza*, 923 F.3d at 957 (citation modified). While Emily makes broad and conclusory allegations that Owens and Williams failed to ensure that inmates like Fernando were receiving appropriate medical treatment, there are no specific allegations as to what the deficient policies were; how those policies were carried out in a widespread or pervasive manner; or, perhaps most notably, that inmates other than Fernando were treated with similar deliberate indifference to their serious medical needs.

Rather, Emily has only alleged that Fernando alone suffered at the hands of CCADC's medical staff over a period of approximately two weeks.[56] This is insufficient to plead a widespread practice, custom, or policy that could impose supervisory liability on Owens and Williams. Moreover, the few allegations on this score that Emily does proffer—essentially, that Owens and Williams "had actual knowledge of violations of [Fernando's] and other inmates' constitutional protection from cruel and unusual punishment and constitutional rights to medical treatment for serious medical needs"—lack specific factual grounding and constitute the kind of "formulaic recitation" of the elements of the cause of action that fail to state a claim for relief.[57] *Iqbal*, 556 U.S. at 678 (citation omitted). Even though Emily alleges that some correctional officers employed by the Cobb County Sheriff's Office witnessed Fernando's purported mistreatment and suggested that he file a grievance, the amended complaint does not contain sufficient facts to impute that knowledge onto high-level leadership like Owens and Williams, especially given that Emily admits Fernando never filed a grievance that might have put Owens and Williams on alert that something was wrong.[58]

---

56 *Id*. at 46–57, ¶¶ 202–235.

57 *Id*. at 48, ¶ 209; at 53 ¶ 227.

58 *Id*. at 31–32, ¶¶ 142–143.

Even more, Emily's generalized allegations as to failure to train, supervise, and staff CCADC lack the required specificity to establish that these practices were deficient; Owens and Williams had the requisite knowledge of those deficiencies to impose supervisory liability; or there is even necessarily causation between their purported failures and Fernando's death. *See Keith*, 749 F.3d at 1054 ("[N]ot only does [plaintiff] fail to demonstrate that [Sheriff] was on notice, she also fails to demonstrate how 'better training' would have prevented the incident leading to [the] death. Therefore . . . her failure to train claim must also fail."). Accordingly, Emily has failed to state her claims for supervisory liability against Owens and Williams, and those claims are dismissed.[59]

### 2. State Law Claims for Professional Negligence and Wrongful Death

#### *i.* Professional Negligence

Emily and Larry assert professional negligence claims against Dr. Todd and the non-physician healthcare providers.[60] As an initial matter, Larry does not have

---

[59] As a result, the Court finds it unnecessary at this juncture to address Owens and Williams's qualified immunity argument. ECF 100, at 22. In addition, Owens and Williams have attached employment contracts to their motion to dismiss that appear to establish that the healthcare Defendants were not employees of the Cobb County Sheriff's Office. ECF 100-1. Given the Court's dismissal of these supervisory liability claims against Owens and Williams on other grounds, however, the Court need not address this argument at this time.

[60] ECF 92, at 39–42, ¶¶ 173–185.

standing to bring this claim. Rather, only Emily, as administratrix of Fernando's estate, has standing to bring a tort claim, like professional negligence, on Fernando's behalf. *See Ferguson v. Kennestone Hosp., Inc.*, No. A26A1367, 2026 WL 2663284, at *2 (Ga. Ct. App. Sept. 10, 2026) ("Upon the husband's death, his claim for battery vested in the administrator of his estate, not in any heirs or next of kin."). As to the merits of the claim, to prove negligence under Georgia law, a plaintiff must allege that the medical professional failed to exercise a "reasonable degree of care and skill." O.C.G.A. § 51-1-27. Three essential elements to establish liability in a medical malpractice action have emerged from the statute: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." *Zwiren v. Thompson*, 276 Ga. 498, 499 (2003) (citation omitted).

As previously noted, Emily fails to make sufficiently specific allegations against healthcare providers Osagie, Turkson, Ndege, Wiley, Ephion, Palmer, Rico-Eccles, Oscar, Muhammad, Swaby, Sims, Shelton, Huller, Agyekum, Collis, Mcfarlane, Campbell, Obichi, and Davis. For that same reason, Emily fails to state her negligence claim against these Defendants, and it is dismissed.

On the other hand, Emily has alleged specific facts supporting a negligence claim against Dr. Todd, Stevic, and Forbes. Here, Emily alleges that these

Defendants, as medical professionals, owed a duty of care to Fernando to provide him with adequate medical treatment and necessary prescription medications.[61] Emily further alleges that these Defendants failed to provide Fernando with these medications, and failed to consistently monitor his health while he was in custody, even while being aware of Fernando's vulnerable medical condition.[62] Emily contends that these Defendants breached their duty of care by failing to contact Fernando's physicians, even after learning that he had a cardiac condition; was prescribed an opioid and numerous cardiac medications; and had undergone cardiac surgery.[63] Finally, Emily alleges that Fernando's death from his heart condition came as a direct result of Dr. Todd, Stevic, and Forbes's failure to provide Fernando with the necessary treatment to keep him alive.[64] Taking these allegations as true, as required at this stage, Emily has plausibly alleged professional negligence claims against Dr. Todd, Stevic, and Forbes.

Defendants make limited attempts to challenge these claims and mostly fail to address the substance of Emily's allegations. First, Defendants argue that the amended complaint should be dismissed because Emily's attached expert affidavit

---

61 *Id*. at 39, ¶ 174; at 41, ¶ 181.

62 *Id*. at 16, ¶ 67; at 17, ¶ 73; at 19–20, ¶¶ 77–81; at 39–40, ¶¶ 175–176.

63 *Id*. at 19–20, ¶¶ 78–80; at 39, ¶ 175.

64 *Id*. at 40, ¶ 177; at 42, ¶ 184.

failed to comply with Georgia pleading requirements for a professional negligence claim, specifically, under O.C.G.A. § 9-11-9.1(a).[65] This argument fails, as the United States Supreme Court has ruled that state laws requiring an affidavit in support of malpractice claims conflict with federal pleading requirements and are thus generally inapplicable in federal court. *See Berk v. Choy*, 607 U.S. 187, 199 (2026). Numerous decisions from other judges in this District have found the same specifically with regard to O.C.G.A. § 9-11-9.1(a). *See Stidham v. United States*, No. 1:13-CV-1093-TWT, 2014 WL 25584, at *2 (N.D. Ga. Jan. 2, 2014) (collecting cases).

For her part, Dr. Todd challenges the affidavit on an evidentiary basis.[66] But the affidavit does not undermine the allegations in the amended complaint, which, as explained, plausibly alleges a claim for professional negligence. "[T]he inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence." *Alston v. Eastman*, No. 1:18-CV-5343-SCJ, 2019 WL 11316656, at *1 (N.D. Ga. Apr. 16, 2019) (citation omitted). And, as Emily states in her response, "pleadings are not evidence," and whether the affidavit meets the required evidentiary standard for admissibility at trial is wholly irrelevant for purposes of determining whether Emily has sufficiently stated her claims.[67]

---

65 ECF 98, at 3.

66 ECF 99, at 3.

67 ECF 109, at 5.

Accordingly, Emily's professional negligence claims against Dr. Todd, Stevic, and Forbes survive dismissal.

#### *ii.* Wrongful Death

Plaintiffs assert a wrongful death claim against Dr. Todd and the non-physician healthcare providers under O.C.G.A. § 51-4-2.[68] As an initial matter, and unlike the negligence claim, Emily does not have standing to assert this cause of action. Only "[w]hen there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2 or 51-4-4, the administrator or executor of the decedent may bring an action." O.C.G.A. § 51-4-5(a). Accordingly, Larry, bringing his claim as the surviving parent, is the only party who may proceed with this claim, while Emily, bringing her claim as the administratrix of Fernando's estate, may not. *See Hambrick v. Wells Fargo Bank, N.A. Inc.*, No. 1:22-CV-3509-MLB, 2023 WL 11983430, at *3 (N.D. Ga. June 9, 2023) ("In other words, because [Larry] is [Fernando's] parent, [ ]he was entitled to bring a wrongful death claim. This precludes [Fernando's] estate from doing so. [Larry] cannot throw off [his] status as a parent to act instead as an administrator for a wrongful death claim.").

However, besides standing, procedural barriers exist as to Larry's wrongful death claim. Specifically, Larry appears to have brought this claim under the

---

68 ECF 92, at 42–43, ¶¶ 186–191.

wrong statute. O.C.G.A. § 51-4-2 only allows for wrongful death claims brought by "[t]he surviving spouse or, if there is no surviving spouse, a child or children."[69] The complaint contains no allegations that Fernando had a surviving spouse or child, and Larry is Fernando's parent. Accordingly, Larry's wrongful death claim is dismissed without prejudice.

## III. DEFENDANTS' MOTION FOR JOINDER

Dr. Todd and the non-physician healthcare providers, under the guise of a jointly filed motion for joinder, have improperly filed a successive motion to dismiss.[70] The motion for joinder includes substantive arguments that were or could have been raised as Rule 12(b)(6) arguments in their original motions to dismiss, including challenges to the sufficiency of Emily's § 1983 deliberate indifference claims and whether Emily alleged enough personal participation on Dr. Todd's part to state a claim for supervisory liability.[71] "[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Accordingly, the motion for joinder is denied and the Court will not consider any arguments contained therein.

---

69 *Id.*

70 ECF 101.

71 *Id.*

## IV. DEFENDANTS' REMAINING MOTIONS

A few motions remain. First, Dr. Todd's motion for more definite statement was filed before Plaintiffs filed their amended complaint and relates to the initial complaint.[72] Accordingly, Dr. Todd's motion for more definite statement is **DENIED as moot**.

Next, Dr. Todd and the non-physician healthcare providers' motion to stay seeks a stay pending a ruling on the motions to dismiss.[73] This request was always moot. The Court's Standing Order automatically stays all discovery matters when a motion to dismiss is pending.[74] The motion to stay is **DENIED as moot.**

Finally, Dr. Todd and the non-physician healthcare providers' motion to amend seeks amendment of both their original and duplicate motions to dismiss by including Plaintiffs' expert affidavit.[75] As previously explained, the affidavit is irrelevant to whether Plaintiffs' amended complaint stated a claim. Accordingly, this motion to amend is **DENIED as moot.**

---

72 ECF 42.

73 ECF 105.

74 ECF 3, at 7–8 ("During the pendency of a motion to dismiss filed by any party, in whole or in part, all discovery is automatically stayed until the Court rules on the motion or otherwise directs.").

75 ECF 115.

## V. CONCLUSION

Defendants Owens and Williams's motion to dismiss [ECF 100] is **GRANTED**. Defendant Dr. Todd's motion to dismiss [ECF 99] is **DENIED**. Defendant non-physician healthcare providers' motion to dismiss [ECF 98] is **GRANTED** as to Plaintiffs' claims against Defendants Osagie, Turkson, Ndege, Wiley, Ephion, Palmer, Rico-Eccles, Oscar, Muhammad, Swaby, Sims, Shelton, Huller, Agyekum, Collis, Mcfarlane, Campbell, Obichi, and Davis, but **DENIED** as to Plaintiffs' claims against Stevic and Forbes. Defendants Dr. Todd and the non-physician healthcare providers' motion for joinder [ECF 101] is **DENIED**. Defendant Dr. Todd's motion for more definite statement [ECF 42], Dr. Todd and the non-physician healthcare providers' motion to stay [ECF 105], and their motion to amend [ECF 115] are **DENIED as moot**.

Dr. Todd, Stevic, and Forbes are **ORDERED** to answer the remaining portions of the amended complaint within 14 days of this Order. These Defendants and Plaintiffs are further **ORDERED** to file their Joint Preliminary Report and Discovery Plan within 30 days of this Order. These remaining parties are also **ORDERED** to file their certificates of interested persons and corporate disclosure statement within three days of this Order. *See* LR 3.3, NDGa.

The Clerk is **DIRECTED** to terminate on the docket the remaining Defendants who have been dismissed pursuant to this Order, and to submit this Order to undersigned after 30 days.

**SO ORDERED** this 30th day of September, 2026.

Steven D. Grimberg
United States District Judge